**Affirmed as Modified and Opinion filed July 28, 2015.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-14-00010-CV

_____

**WENDY SCHREIBER, Appellant**

**V.**

**STATE FARM LLOYDS, Appellee**

**On Appeal from the 190th District Court
Harris County, Texas
Trial Court Cause No. 2012-03419**

# O P I N I O N

In this insurance-coverage case, the trial court rendered judgment that the insured take nothing based on the jury's verdict in favor of the insurer. The verdict included a finding that the fire that destroyed the insured's home was intentionally caused with the insured's prior knowledge or participation. On appeal, the insured asserts that the trial court reversibly erred in prohibiting her from asking certain questions at two depositions and by excluding the testimony of an assistant district

attorney. We conclude that even if the trial court erred in all of these rulings, the errors were harmless. In the insurer's cross-appeal, we hold that the trial court erred in denying the insurer recovery of certain court costs. We modify the judgment to award these court costs, and affirm the judgment as modified.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant/plaintiff Wendy Schreiber's house was destroyed by a fire. The State Fire Marshal's Office investigated the scene and classified the cause of the fire as "undetermined." The State Fire Marshal did not find any evidence of criminal activity, but the State Fire Marshal did not conduct a full cause-and-origin investigation.

Schreiber's home was insured by appellee/defendant State Farm Lloyds. After Schreiber made a claim on the policy, State Farm hired investigators Dustin Deutsch and Lonnie Blevins to conduct a cause-and-origin investigation. According to the trial testimony of both Deutsch and State Farm expert Cory Martin, there are four classifications of fires: accidental fires, natural fires, incendiary fires, and undetermined fires. Deutsch and Blevins determined that the fire was an "incendiary fire." Their determination was based, in part, on evidence that gasoline was found in the home's master bathroom and dining room.

State Farm denied Schreiber's insurance claim. Schreiber then filed suit against State Farm asserting a claim for breach of the insurance contract, as well as various extra-contractual claims. State Farm asserted affirmative defenses, including arson. The jury found that the fire was intentionally caused by an act, design or procurement on the part of Schreiber and that the fire "was intentionally caused with the prior knowledge of or participation of [Schreiber]." The jury also answered various liability questions in State Farm's favor. The trial court rendered judgment that Schreiber take nothing and awarded State Farm taxable court costs

2

totaling $1,307.68.

## II. ISSUES AND ANALYSIS

On appeal, Schreiber asserts that the trial court abused its discretion by (1) ordering that, during the depositions of Blevins and Deutsch, Schreiber could not question Blevins or Deutsch regarding any specific criminal investigations into their conduct or specific acts of criminal conduct on their part outside of their involvement in the investigation of the fire that burned down Schreiber's house and (2) refusing to admit into evidence testimony from a representative of the Harris County District Attorney's Office. Schreiber also argues that even if these two claimed errors are harmless when considered separately, when they are considered together under the doctrine of cumulative error, these errors probably caused the rendition of an improper judgment. State Farm asserts on cross-appeal that the trial court erred by failing to award State Farm its taxable court costs for original deposition transcripts and subpoena fees.

### A. Did the trial court reversibly err in restricting the questions that could be asked at two depositions?

Schreiber noticed the depositions of Blevins and Deutsch. In response, State Farm filed a motion to quash and motion for protection. In ruling on these motions, the trial court allowed Schreiber to ask certain questions at the depositions but prohibited her from asking other questions. Specifically, the trial court allowed Schreiber to query Blevins and Deutsch about the factual circumstances of their investigation of the fire and any alleged contemporaneous "double billing" between the Schreiber fire investigation and any work conducted for any public entity. The trial court also allowed Schreiber to ask Blevins whether he was currently under indictment and, if so, under what charges he had been indicted.

3

The trial court ordered Schreiber to refrain from questioning Blevins or Deutsch regarding any specific criminal investigations into their conduct or specific acts of criminal conduct on their part outside of their involvement in the fire investigation. The trial court stated that this prohibition on questioning at the depositions extended to (1) a *Brady* disclosure made by the District Attorney's Office,[1] (2) any specific instances of Blevins's conduct, Deutsch's conduct, or investigations into either man's conduct in any of the matters identified in the *Brady* disclosure, (3) investigations into fire cases undertaken by Blevins and Deutsch for the District Attorney's Office or the State Fire Marshall's Office that are the subject of the *Brady* disclosure, and (4) any reference to or comparison of facts from any investigation undertaken by Blevins or Deutsch for the District Attorney's Office or the Fire Marshall's Office in cases or matters referenced in the *Brady* disclosure with the investigation of the Schreiber fire.[2]

Schreiber obtained a *Brady* disclosure that informed the Harris County Public Defender's Office in a criminal case that a federal complaint had been filed against Blevins alleging that he violated title 18, section 2314 of the United States Code, which makes it a crime for anyone to transport or cause to be transported in interstate commerce stolen property having a value of $5,000 or more, knowing it to have been stolen, converted, or taken by fraud. The *Brady* disclosure contained an affidavit from the investigating officer in which the officer stated that he had probable cause to believe Blevins removed evidence seized pursuant to a search warrant, transported the evidence across state lines, and then sold the evidence for

---

[1] Under *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196–97, 10 L. Ed. 2d 215 (1963), the State has a duty to disclose to a criminal defendant material evidence favorable to the defendant that is in the State's possession. *See Webb v. State*, 232 S.W.3d 109, 114 (Tex. Crim. App. 2007).

[2] The trial court also stated that this prohibition on questioning at the depositions extended to a specific matter or facts involved in that matter.

financial gain. The *Brady* disclosure also stated that Deutsch was under investigation by the Federal Bureau of Investigation for the same type of criminal conduct alleged against Blevins.

In her first issue, Schreiber argues that the trial court's restrictions on her ability to question Blevins and Deutsch at their depositions constituted an abuse of discretion that prevented Schreiber from discovering evidence relating to the credibility and investigative methods of Blevins and Deutsch. We presume, without deciding, that the trial court erred in imposing these restrictions, and we examine whether any such error probably caused the rendition of an improper judgment or probably prevent Schreiber from properly presenting this case on appeal. *See* Tex. R. App. P. 44.1(a); *Lesikar v. Moon*, No. 14-11-01016-CV, 2012 WL 3776365, at *5 (Tex. App.—Houston [14th Dist.] Aug. 30, 2012, pet. denied) (mem. op.).

Schreiber argues that the trial court reversibly erred in preventing her from discovering this evidence because Blevins and Deutsch were the only witnesses to opine that the fire was intentionally set, the only witnesses to testify that the sample of flooring determined to contain gasoline came from the home and was handled appropriately in the investigation, and the only witnesses to testify that the stove cooktop was found at the site in the "on" position. Because Blevins and Deutsch were such critical witnesses, Schreiber argues, her inability to obtain information regarding the misconduct identified in the *Brady* disclosure probably led to an improper judgment inasmuch as it prevented her from attacking Blevins's and Deutsch's investigative methodology, including their alleged propensity for improperly and illegally taking evidence, as well as their veracity and bias.

At trial, Blevins and Deutsch both testified. They stated that they conducted

a cause-and-origin investigation for State Farm. Deutsch was in charge of the cause-and-origin investigation, and he provided testimony regarding the conclusions he reached during the investigation. Deutsch testified that after Blevins, Deutsch, and technicians washed the scene, he saw irregular burn patterns on the floors of the home. Deutsch explained, and another expert, Cory Martin, confirmed that ignitable liquids can cause irregular burn patterns. Deutsch hired an individual named Bobby Caldron to bring a hydrocarbon-detecting dog to aid in a search for possible ignitable liquids. The dog alerted to various places on the floor of the home. Deutsch, Blevins, and Caldron all worked together to take samples of those areas and sent them to a forensic lab. The forensic-lab analyst testified that the samples revealed the presence of weathered gasoline, meaning that the gasoline contained on the samples had been stressed by heat. The analyst testified that he saw no evidence suggesting that the samples had been mishandled.

Based on the finding of gasoline, the burn patterns, and the way the home was completely engulfed in the fire, Deutsch concluded that the gasoline vapors were ignited by a handheld open flame. Deutsch also noted that he found a roman candle outside the home. Deutsch testified that a cooktop stove was found with the switch flipped to the "on" position, but that the cooktop was not a competent source of ignition for the gasoline vapors. Deutsch opined that the cooktop may have energized the fire once it started.

With Schreiber's permission, Deutsch recorded the conversation in which he informed Schreiber that he found gasoline in the home and explained to her that he did not have an accidental explanation for the presence of gasoline. He asked her a battery of questions regarding any potential explanation for the gasoline. During this conversation, he stated that he needed to know the answer to these questions to rule out any accidental explanation for the presence of gasoline. Deutsch

explained to Schreiber that the presence could be accidental, for example, if she had been clumsy with her phone while filling the car up with gasoline and had spilled gasoline all over her shoes. At the time, Schreiber could not think of any accidental cause of gasoline, but a few days later she informed Deutsch that she, in fact, had spilled gasoline on her shoes and clothes while filling up her car with gasoline. According to Schreiber after she spilled gasoline on her shoes and clothes, she picked up her children from school, returned home, and dropped her clothes in the bathroom, where one of the samples was found. The shoes in question were not present during the fire, and Schreiber provided the shoes to Deutsch. The shoes were tested, but they did not contain any gasoline. The forensic-lab analyst testified that gasoline from clothes was not a plausible explanation for finding the presence of gasoline on the tile samples because the time delay from the spillage to Schreiber dropping the clothes on the bathroom floor would have caused the gasoline to vaporize. Vaporized gasoline would not have been able to efficiently transfer into the grout of Schreiber's glazed bathroom tiles. State Farm's second expert, Martin, affirmed Deutsch's analysis and conclusions.

Although the *Brady* disclosure revealed that Deutsch was under investigation for stealing evidence during other investigations, there was no evidence that any evidence was stolen or mishandled in Schreiber's case. Furthermore, unlike the instances in which Deutsch allegedly stole evidence for personal gain, no motive for Deutsch to steal or mishandle evidence is apparent from this record. Schreiber questioned Deutsch and Blevins about the money they made performing investigations for State Farm. Deutsch testified that he had investigated the cause and origin of fires for State Farm 192 times and that seventeen of those fires were determined to be incendiary. State Farm denied

7

claims on three of them. Blevins testified that he did not know how the cause-and-origin determination affected State Farm's decision-making process, and Blevins's testimony was supported by the fact that of the seventeen fires Deutsch and Blevins determined were incendiary, State Farm denied the insured's claim on only three occasions. In addition to the evidence showing a lack of motive for Deutsch and Blevins to mishandle evidence at the fire scene, there was no evidence whatsoever that the flooring samples were mishandled in any way. To the contrary, Deutsch and Blevins were not alone when they took the samples and the forensic-lab analyst testified that the flooring samples indeed had been stressed by heat, which suggests the samples tested for the presence of gasoline were at the home during the fire. The forensic-lab analyst saw no evidence of tampering, and Schreiber did not produce any such evidence.

Schreiber was able to put on evidence that cast doubt on Deutsch's and Blevins's credibility and ability as investigators. Schreiber introduced evidence that neither Deutsch nor Blevins currently were employed with the District Attorney's Office and that Deutsch, in fact, had been "dishonorably discharged." Schreiber introduced evidence that neither Deutsch nor Blevins was currently investigating any fires and that no insurance companies were hiring either of them. Schreiber also introduced evidence that Deutsch's resume contained false statements.

In addition to the evidence relating to Deutsch's and Blevins's cause-and-origin investigation, State Farm introduced evidence that:

- Schreiber relied on the father of her children, Kevin Robinson, almost exclusively, for her financial security. At the time of the fire, Robinson was experiencing financial difficulty and, consequently, Schreiber was experiencing financial difficulty. Robinson had not been able to provide Schreiber with money to pay the mortgage and Schreiber had not been able to pay property taxes. Her bank had

8

threatened foreclosure on the home that burned down. The home had been listed as "for sale" for months with little interest from prospective buyers.

- Robinson was the last person in the home before the fire. In a statement, Robinson said he was at his residence around the time the fire started. But, his cell phone records revealed he was near Schreiber's house.

- Schreiber was shopping in Katy at the time of the fire, and she used her debit card extensively, which was out of character for her, potentially indicating that she was trying to establish an alibi.

- Robinson told State Farm that he had been at the house applying lacquer thinner to the kitchen cabinets at Schreiber's request earlier in the day on the day of the fire. Schreiber explained that she requested that Robinson apply the lacquer thinner to the cabinets because her daughter had drawn on the cabinets with permanent marker and Schreiber had an appointment with a real estate agent to take pictures of the house.

- The real estate agent stated that she already had the pictures she needed of the house and that she had no plans to take any more pictures of the house. A college student—Libby—who worked as a housekeeper for Schreiber six to eight hours per week testified that there were no marks on the cabinets.

- Libby also testified that in the weeks before the fire many items had been removed from the home, including portraits of Schreiber's daughter in fairy outfits, a popcorn machine the children loved, a treadmill, and towels. After the fire, Libby noticed that the children's Christmas presents, as well as many pairs of shoes and pieces of clothing, remained in Schreiber's car.

- Though on appeal Schreiber suggests Libby was a disgruntled ex-employee, the trial evidence does not contain any evidence suggesting any animosity between Schreiber and Libby. Instead, Libby testified that after the fire, she did not return to clean the house though Schreiber asked her to watch the children one day. While the record is somewhat unclear on the issue, there was no trial evidence Libby left for any reason other than as a natural consequence of the fire consuming Schreiber's home.

- During the trial, Schreiber's trial counsel alluded to a dispute between

Libby's father and Robinson. Libby testified that she did not know the details of the dispute, but knew that it related to taxes owing on a building Robinson sold to her father. Ronald Lopez, an adjuster for State Farm, testified Libby's father mentioned the dispute and said the issue was being resolved by Libby's father deducting the owed taxes from the amount he owed Robinson for the building. Lopez also spoke with Robinson, who said he was planning on returning the owed money to Libby's father. Robinson confirmed that he intended to return the money to Libby's father in February 2011, when Libby first discussed the missing items with the police department. Libby testified that the dispute was currently "not a big deal." When pressed about whether the dispute was ever a "big deal," Libby said she did not know the details of the dispute because "[i]t wasn't [her] thing," and she was not with her father when he spoke with Robinson. She thought her father ended up paying the taxes owed on the building after the fire and did not discuss the matter again with Robinson until Robinson called her father about a year later.

- Though Schreiber denied removing pictures displayed in her home before the fire, Schreiber admitted she removed at least two of the other items—the treadmill and the popcorn machine—that Libby stated Schreiber had removed from the house before the fire.

- Schreiber told State Farm that Robinson was not a member of her household and that she could not compel him to give an examination under oath because he was "out of the picture."

- Although Schreiber told State Farm she had no relationship with Robinson, Schreiber and Robinson communicated extensively in the months after the fire, including multiple contacts on the day and night of the fire and immediately before and after Schreiber gave statements to State Farm. After the fire, the landlord of Schreiber's temporary housing refused to renew a lease because she determined that Robinson had been living there in violation of the lease.

The trial evidence included substantial circumstantial evidence that would support a reasonable inference that the fire was intentionally caused by an act, design, or procurement on Schreiber's part and that the fire was intentionally caused with Schreiber's prior knowledge or participation. The record also reflects that, at trial, Schreiber was able in various ways to attack the credibility and

alleged bias of Deutsch and Blevins and to attack their investigative methodology. After reviewing the entire record, we conclude that, even if the trial court erred by restricting Schreiber's ability to question Blevins and Deutsch at their depositions, any such error did not probably cause the rendition of an improper judgment or probably prevent Schreiber from properly presenting this case on appeal. *See* Tex. R. App. P. 44.1(a); *Smith v. Thornton*, 765 S.W.2d 473, 477–78 (Tex. App.— Houston [14th Dist.] 1988, no writ). Accordingly, we overrule Schreiber's first issue.

### B. Was the trial court's exclusion of the testimony of an assistant district attorney harmful?

Under her second issue, Schreiber asserts that the trial court reversibly erred in excluding from evidence the testimony of Lynne Parsons, an assistant district attorney. According to Schreiber, the trial court should have allowed that testimony under Texas Rules of Evidence 404(b) and 608(a). Schreiber made an offer of proof showing the proffered testimony of Parsons. On appeal, Schreiber asserts that the trial court erred in excluding evidence in which Parsons testified as follows:

- Parsons is able to provide evidence as to Deutsch's character for truthfulness or untruthfulness within the law-enforcement community and Deutsch's reputation is "very poor."

- Parsons is able to provide information about Blevins's reputation for truthfulness or untruthfulness within the law-enforcement community and that reputation is "untruthful."

- While working in the Major Fraud Unit, Blevins and Deutsch were charged with executing a search warrant seeking property that had been purchased with stolen funds; Blevins took property that was the subject of the search warrant to another state and sold it. Blevins has been indicted in federal court for this conduct.

- After Blevins was indicted, Deutsch resigned from his employment

with the District Attorney's Office.

- Two defendants in criminal proceedings whom Deutsch arrested have complained that money they had when they were arrested was missing when their personal possessions were returned to them. If Deutsch took these individuals' money, the conduct is illegal.

- Deutsch's office at the District Attorney's Office was in "quite a state of disrepair." Money was found in Deutsch's office that was connected to the wallet of one of the defendants who had complained about missing money. There were seized narcotics in Deutsch's office that had not been properly tagged and that were connected with another defendant who was complaining about money having been taken from him. There was a drawer that was full of cell phones, and it could not be determined to which cases the phones belonged.

- It is absolutely imperative that proper procedures be followed regarding the tagging of property and its placement in the evidence room.

- Deutsch engaged in intentional acts not to document evidence according to proper procedure, a serious matter that goes to the very essence of integrity and pursuing and seeking justice.

- Parsons believes Deutsch received a "dishonorable discharge reported to the law enforcement licensing agency," but she does not know for sure.

- In any matter in which a person is collecting and handling evidence, if the person has no integrity about how the person handles or documents evidence, then one cannot rely on that person for truthfulness.

- Parsons is very certain about her opinion as to the reputations of Deutsch and Blevins and "our office's opinion about their reputation[s]."

We presume, without deciding, that the trial court erred in excluding Parsons's testimony, and we examine whether any such error was harmful. *See* Tex. R. App. P. 44.1(a). For the exclusion of evidence to constitute reversible error, the complaining party must show that the trial court committed error and that

the error probably caused the rendition of an improper judgment. *See State v. Central Expressway Sign Associates*, 302 S.W.3d 866, 870 (Tex. 2009). The Supreme Court of Texas has recognized the impossibility of prescribing a specific test to determine whether a particular error is harmful, and the high court entrusts that determination to the sound discretion of the reviewing court. *Id*. In making this determination, the court must review the entire record. *Id*. The complaining party need not prove that "but for" the exclusion of evidence, a different judgment necessarily would have resulted. *Id*. The complaining party need show that the exclusion of evidence probably caused the rendition of an improper judgment. *Id*. The role that the excluded evidence plays in the context of the trial is also important. *Id*. Thus, the exclusion is likely harmless if the evidence was cumulative, or the rest of the evidence was so one-sided that the error likely made no difference in the judgment. *Id*. But, if erroneously excluded evidence was crucial to a key issue, the error is likely harmful. *Id*.

Although the trial court excluded Parsons's testimony, the jury did hear evidence that Deutsch had been dishonorably discharged from the District Attorney's Office. While this evidence is not exactly the same as evidence that Deutsch had a poor reputation for truthfulness, the evidence suggests that the District Attorney's Office fired Deutsch for untoward conduct. The jury likely inferred from this evidence that Deutsch did something dishonorable, or at least problematic, even if it could not infer the precise conduct that led to the dishonorable discharge. Schreiber also introduced evidence that neither Deutsch nor Blevins currently were employed with the District Attorney's Office and that no insurance companies were hiring either of them. Schreiber also showed that Deutsch's resume contained false statements.

As detailed in the previous section, the trial evidence included substantial

13

circumstantial evidence that would support a reasonable inference that the fire was intentionally caused by an act, design, or procurement on Schreiber's part and that the fire was intentionally caused with Schreiber's prior knowledge or participation. The record also reflects that, at trial, Schreiber was able to attack the credibility and alleged bias of Deutsch and Blevins and to attack their investigative methodology. After reviewing the entire record under the applicable standard of review, we conclude that, even if the trial court erred by excluding Parsons's testimony, any such error did not probably cause the rendition of an improper judgment. *See* Tex. R. App. P. 44.1(a); *Southwestern Elec. Power Co. v. Burlington Northern Railroad Co*., 966 S.W.2d 467, 473–74 (Tex. 1998). Accordingly, we overrule Schreiber's second issue.

### C. Did any errors by the trial court cause cumulative error?

Schreiber asserts in her third issue that even if the trial court's errors under the first two issues were individually harmless, the combined effect of the two errors was harmful. Relying on the doctrine of cumulative error, Schreiber argues that multiple errors, even if considered harmless taken separately, may result in reversal if the cumulative effect of such errors is harmful. Schreiber relies on various authorities, including obiter dicta from an opinion of this court. *See Jones v. Lurie*, 32 S.W.3d 737, 745 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (addressing cumulative error at the end of an opinion in which the court had not found more than one error). We presume, without deciding, that (1) the trial court erred in imposing the restrictions on Schreiber's ability to question Blevins and Deutsch at their depositions and in excluding Parsons's testimony and (2) the doctrine of cumulative error applies to the errors alleged under Schreiber's first two issues, even though one issue addresses a discovery ruling and the other issue addresses an evidentiary ruling at trial.

14

After reviewing the entire record, we conclude that, even if the trial court committed these errors and considering the cumulative effect of these errors, they did not probably cause the rendition of an improper judgment or probably prevent Schreiber from properly presenting this case on appeal. *See* Tex. R. App. P. 44.1(a). Therefore, we overrule Schreiber's third issue.

## D. Did the trial court err in denying State Farm's request for court costs based on original-deposition-transcript fees and subpoena fees?

In its cross-appeal, State Farm asserts that the trial court erred in failing to award to State Farm court costs State Farm incurred for original deposition transcripts and subpoena fees. Before the trial court rendered judgment and before the trial court clerk issued any bill of costs, State Farm moved for entry of judgment and costs. In its motion, State Farm asked the trial court to render a take-nothing judgment against Schreiber and to award State Farm, as the successful party, approximately $26,000 in court costs and State Farm attached evidence proving that it had incurred these costs. Schreiber objected that, of the costs State Farm sought to recover, approximately $6,000 were not taxable court costs. In her response, Schreiber did not submit any evidence or assert that there was good cause why State Farm should not recover all of its taxable court costs. No record was made of the hearing on State Farm's motion.[3] On the hearing day, the trial court rendered the judgment State Farm sought, except that the trial court awarded State Farm only $1,307.68 in court costs, the aggregate amount of State Farm's filing fees. In the judgment, the trial court did not state any good cause why the successful party, State Farm, should not recover from Schreiber all taxable court costs State Farm incurred in the lawsuit.

---

[3] The trial court's court reporter has informed this court that no record was made of this hearing so there is no way to obtain a reporter's record of the proceedings at that hearing.

On appeal State Farm argues under a cross-issue that it proved it had incurred taxable court costs based on filing fees, original-deposition-transcript fees, and subpoena fees. State Farm asserts that as the successful party, under Texas Rule of Civil Procedure 131, the trial court erred by not awarding State Farm, the successful party, all of these costs. *See* Tex R. Civ. P. 131. Though Texas Rule of Civil Procedure 141 gives a trial court discretion to order that the successful party should not recover all taxable court costs it incurred, State Farm argues that (1) to exercise this discretion a trial court must state on the record good cause for taking this action; and (2) the record reveals that the trial court never made such a statement on the record.

Schreiber agrees that State Farm prevailed at trial and was entitled to an award of costs in the trial court's judgment. But, Schreiber argues, Civil Practice and Remedies Code section 31.007(b), enacted in 1987, changed Texas law and gave trial courts discretion to not award the successful party all of the taxable court costs that party incurred, without any requirement that the trial court state on the record good cause for doing so. *See* Tex. Civ. Prac. & Rem. Code Ann. § 31.007(b) (West, Westlaw through 2013 3d C.S.). Under this statute, Schreiber maintains, the trial court had discretion to award State Farm $1,307.68 in taxable court costs, even though State Farm incurred substantially more taxable court costs, and without any requirement that the trial court state on the record good cause for doing so.

Texas Rule of Civil Procedure 131 provides that "[t]he successful party to a suit shall recover of his adversary all costs incurred therein, except when otherwise provided." Tex. R. Civ. P. 131. Under Texas Rule of Civil Procedure 141, the trial court "may, for good cause, to be stated on the record, adjudge the costs otherwise than as provided by law or these rules." Tex. R. Civ. P. 141. After the enactment

16

of Civil Practice and Remedies Code section 31.007(b), but without specifically addressing the argument based on that statute Schreiber makes, the Supreme Court of Texas held that, to order a successful party to bear some of the taxable court costs incurred by that party, the trial court must state on the record good cause for doing so. *See Roberts v. Williamson*, 111 S.W.3d 113, 124 (Tex. 2003). Similarly, this court has held that the trial court must award the successful party to a suit its taxable court costs from the adverse party, unless the trial court finds good cause to adjudge the costs otherwise and states its reasons for finding good cause on the record. *See Howell Crude Oil Co. v. Donna Refinery Partners, Ltd*., 928 S.W.2d 100, 112 (Tex. App.—Houston [14th Dist.] 1996, writ denied).

Civil Practice and Remedies Code section 31.007(b) provides in pertinent part that "[a] judge of any court *may include* in any order or judgment all costs, including the following: [listing three categories of costs] and (4) such other costs and fees as may be permitted by these rules and state statutes." Tex. Civ. Prac. & Rem. Code Ann. § 31.007(b) (emphasis added). The parties have not cited and research has not revealed any cases addressing the specific statutory argument Schreiber advances. In construing a statute, our objective is to determine and give effect to the Legislature's intent. *See Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex. 2000). If possible, we must ascertain that intent from the language the Legislature used in the statute and not look to extraneous matters for an intent the statute does not state. *Id*. If the meaning of the statutory language is unambiguous, we adopt the interpretation supported by the plain meaning of the provision's words. *St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex. 1997). We must not engage in forced or strained construction; instead, we must yield to the plain sense of the words the Legislature chose. *See id*.

We conclude that section 31.007(b) is unambiguous and that it lists certain

categories of costs that are taxable court costs. *See* Tex. Civ. Prac. & Rem. Code Ann. § 31.007(b). The statute does not address the circumstances under which a trial court may order a successful party to bear taxable court costs the party incurred. *See id*. We conclude that this statute does not conflict with, supersede, or modify Rule 131 or Rule 141 of the Texas Rules of Civil Procedure. *See id*; Tex. R. Civ. P. 131, 141. Thus, this statute does not change the rule that the trial court must award the successful party to a suit all of its taxable court costs from the adverse party, unless the trial court finds good cause to adjudge the costs otherwise and states its reasons for finding good cause on the record. *See Roberts*, 111 S.W.3d at 124; *Howell Crude Oil Co.*, 928 S.W.2d at 112.

State Farm and Schreiber agree, and Texas law provides, that both the fees for original deposition transcripts and subpoena fees are taxable court costs. *See* Tex. Civ. Prac. & Rem. Code Ann. § 31.007(b)(2); *City of Houston v. Maguire Oil Co.*, 342 S.W.3d 726, 749 (Tex. App.—Houston [14th Dist.] 2011, pet. denied); *Operation Rescue-National v. Planned Parenthood of Houston and Southeast Texas, Inc.*, 937 S.W.2d 60, 87–88 (Tex. App.—Houston [14th Dist.] 1996), *aff'd as modified on other grounds*, 975 S.W.2d 546 (Tex. 1998). The record reflects that State Farm proved that it had incurred $20,195.15 in taxable court costs, and as a matter of law, State Farm is the successful party. Schreiber did not argue in the trial court that there was good cause for the trial court not to award State Farm all of its taxable court costs from Schreiber. On appeal, Schreiber does not assert that the trial court in fact found good cause not to award State Farm all of its taxable court costs. We conclude that the trial court erred in not awarding State Farm the $20,195.15 in taxable court costs that State Farm proved it had incurred. *See Roberts*, 111 S.W.3d at 123–24; *Howell Crude Oil Co.*, 928 S.W.2d at 112. Accordingly, we sustain State Farm's cross-issue in this regard.

18

### III.  CONCLUSION

Even if the trial court erred by restricting Schreiber's ability to question Blevins and Deutsch at their depositions, any such error was harmless.  Likewise, even if the trial court erred by excluding Parsons's testimony, any such error was harmless. Presuming that the doctrine of cumulative error applies to the errors alleged under Schreiber's first two issues, even if the trial court made these errors and bearing in mind the cumulative effect of them, we conclude they did not probably cause the rendition of an improper judgment or probably prevent Schreiber from properly presenting this case on appeal.  But, the trial court erred in not awarding State Farm $20,195.15 in taxable court costs. Therefore, we modify the trial court's judgment to award State Farm a total of $20,195.15 in taxable court costs, and we affirm the judgment as so modified.

/s/           Kem Thompson Frost
                  Chief Justice

Panel consists of Chief Justice Frost and Justices Boyce and McCally.