EXHIBIT A

Robert S. BENNETT, Appellant

v.

COMMISSION FOR LAWYER
DISCIPLINE, Appellee

NO. 14–14–00470–CV

Court of Appeals of Texas,

Houston (14th Dist.).

Opinion filed March 24, 2016.

Thomas Clark Wright, Jessica A. Barger, Houston, TX, for Appellant.

Daniel William Davis, Robert M. Roach, Jr., Linda Acevedo, Timothy R. Bersch, Houston, TX, for Appellee.

Panel consists of Justices Boyce, Busby, and Brown.

## OPINION

J. Brett.Busby, Justice

Appellant Robert S. Bennett appeals from a final judgment of disbarment signed following a bench trial. The trial court disbarred Bennett after concluding that he violated both Rule 1.15(d) and Rule 3.02 of the Texas Disciplinary Rules of Professional Conduct in the course of a fee dispute with former client Gary Land.

Bennett argues that the evidence is legally and factually insufficient to support the trial court's conclusion that he violated Rule 1.15(d). We sustain Bennett's challenge because there is no evidence that, at the time Bennett's representation of Land was terminated, he failed to refund an advance payment of fees that had not been earned.

Bennett also challenges the legal and factual sufficiency of the evidence to support the trial court's conclusion that he violated Rule 3.02. We overrule this challenge because there is sufficient evidence that Bennett took actions that unreasonably increased the costs or other burdens of the fee dispute or that unreasonably delayed its resolution.

Finally, Bennett seeks a new trial based on certain evidentiary rulings at trial. Bennett argues that the trial court erred when it: (1) excluded Bennett's expert witnesses from testifying during the misconduct phase of the trial about their interpretations of the Texas Disciplinary Rules of Professional Conduct and the application of those rules to the facts of this case; and (2) excluded testimony regarding Bennett's general character during the misconduct phase of the trial. We overrule this issue because (1) a trial court does not abuse its discretion when it excludes expert testimony on questions of law or the application of law to the facts of the case; and (2) to the extent the trial court abused its discretion when it excluded character testimony, there was no harm because the testimony was admitted during the sanctions phase of the trial.

Because there is legally insufficient evidence to support the trial court's conclusion that Bennett violated Rule 1.15(d), and the trial court based its decision to

disbar Bennett on its conclusion that he violated both Rule 1.15(d) and Rule 3.02, we reverse the trial court's judgment of disbarment and remand the case for reconsideration of the appropriate sanction to be imposed as a result of the trial court's conclusion that Bennett violated Rule 3.02.

## BACKGROUND

Gary Land approached Robert Bennett in January 2011 about retaining Bennett as his attorney. Bennett and Land met at Bennett's office, and they spent several hours together discussing Land's legal issues. Land sought to retain Bennett to represent him in a lawsuit arising from a commercial dispute in Amarillo, Texas. Land also wanted Bennett to investigate a potential claim of federal civil rights violations arising out of Land's belief that federal agents had been illegally targeting him by damaging his property with acid, attacking him with invisible energy beams and microwaves, and implanting materials under his skin. Bennett provided Land with an "Attorney Retainer & Dispute Resolution Agreement" during the meeting. Bennett encouraged Land to consult with another attorney regarding the Agreement's contents before signing it. Land made several changes to the Agreement and signed it on February 10, 2011.

The Agreement required Land to pay Bob Bennett & Associates, P.C. a $50,000 retainer. Land paid the retainer in two equal installments. The Agreement provided that the retainer would be used "to insure the payment of fees and may be drawn-down for time billed at the discretion of [Bennett]." The Agreement also included an arbitration clause in the event that a dispute arose between the parties. The arbitration clause provides, in pertinent part:

> Our dispute shall be determined by arbitration in Houston, Texas before a panel selected by, and per the rules of the Houston Bar Association Fee Dispute Committee, in accordance with the laws of the State of Texas for Agreements made in and to be performed in Texas. "Disputes" shall include, without limitation, those involving fees, costs, billing, and breach of ethical or fiduciary duties. The arbitration shall be administered by the Houston Bar Association Fee Dispute Committee, pursuant to its Rules and Regulations. Judgment on the award may be entered in any court having jurisdiction and shall include an award for attorney's fees, and a premium charge if sought, along with any fees and expenses associated with the seeking of injunctive relief. . . . By the signatures on this contract, the Client and Bennett agree that the arbitrator's decision in any such arbitration shall be binding, conclusive, and non-appealable pursuant to the Rules and Regulations of the Houston Bar Association Fee Dispute Committee. **Please note that arbitration may result in the client's waiver of significant rights, such as the right to a jury trial, the possible waiver of broad discovery, and the loss of the right to appeal.**

Once Land had signed the Agreement, Bennett and his firm began working on Land's legal matters. Over the next several months, Bennett invoiced Land for legal fees and expenses totaling $70,998.38. Bennett applied the retainer to pay the first $50,000, leaving, in Bennett's view, a balance owed of $20,998.38.

Land disputed the bills and ultimately terminated Bennett's representation on August 3, 2011.

Land then hired a new attorney, who demanded that Bennett reduce Land's bill by no less than $35,000. When Bennett refused, Land submitted the fee dispute to arbitration, naming as respondents Bob

Bennett and Bob Bennett & Associates, P.C. (collectively "Bennett"). Bennett filed a counterclaim in the arbitration, seeking $25,787.50 from Land in excess of the original retainer. Bennett's counterclaim included nearly $4,000 for work that originally had not been billed to Land, but which Bennett now sought "because of the lack of good faith shown by Mr. Land during this process."

The arbitration panel unanimously found in favor of Land on January 3, 2012. It ordered Bennett to return $27,500 in unearned advance fees to Land. The panel denied Bennett's counterclaim.

Bennett filed a motion to modify and correct the arbitration award. The panel denied Bennett's motion and issued a detailed explanation of its award. Among other things, the panel stated that its "consideration of the fees charged on both a micro and a macro level left [it] with the firm conviction that [Bennett] overcharged Mr. Land and took advantage of him." For example, the panel determined that it was unreasonable for Bennett to incur a total of $9,000 in fees in connection with "scheduling appointments with doctors and discussing Mr. Land's claims with doctors who routinely cater to conspiracy theorists who believe they are being targeted by the government." The panel also explained that

> the issues that Mr. Land brought to [Bennett's] attention would have raised immediate and significant flags with any reasonable lawyer. A lawyer in [Bennett's] position should have counseled Mr. Land against spending significant sums investigating and pursuing most of the matters about which he was concerned. Mr. Land should have been told the investigation he sought was almost certain to be futile. [Bennett] failed to do so, and instead appeared to actively encourage Mr. Land's pursuit of

these matters. And, once [he] undertook the representation, [Bennett] billed substantial sums without ever advancing the matter to any significant degree.

Land moved to confirm the arbitration award in a district court in Harris County. Bennett responded by asking the district court to vacate the award because "the panel did not make the decision based on facts, evidence and testimony, but on bias and prejudice." The district court confirmed the arbitration award on July 23, 2012. Bennett appealed the judgment confirming the arbitration award to the First Court of Appeals. Bennett did not obtain a supersedeas bond suspending enforcement of the judgment.

Bennett did, however, initiate a separate lawsuit against Land. Bennett alleged in the separate lawsuit that Land had committed fraud by failing to disclose information to Bennett during the negotiations leading up to Land retaining Bennett.

In October 2012, Land requested an abstract of judgment and a writ of possession to enforce the arbitration judgment. Once the writ was issued, Harris County deputy constables attempted to execute the writ at Bennett's law office. Their efforts were unsuccessful because Bennett "provided an affidavit stating belongings at the firm [are] exempt pursuant to Texas Property Code 42.002(a)(4)."

Land then moved to place the law firm in receivership. The district court granted Land's motion and appointed a receiver to "take possession of and sell the leviable assets of Bob Bennett & Associates P.C. and Bob Bennett, Defendant." Bennett moved for reconsideration of the appointment of a receiver. Bennett argued that he had converted Bob Bennett & Associates, P.C. into a professional limited liability company that was "not subject to seizure or attachment." Bennett subse-

quently appealed the order appointing a receiver to this Court.

On January 22, 2013, Bennett filed a cash bond of $30,931.11 to supersede execution on the arbitration judgment. In his appeal of that judgment to the First Court of Appeals, Bennett argued that the trial court's confirmation of the arbitration award should be reversed because the arbitration panel had "exceeded its powers by creating evidence," "was influenced by the opinion that some of the services performed by Bob Bennett were 'not worthy of pursuit,'" and "denied Bob Bennett the right to cross-examine Gary Land on the third day of testimony." In response, Land asked the appellate court to impose sanctions on Bennett pursuant to Rule 45 of the Texas Rules of Appellate Procedure. Land argued that Bennett should be sanctioned because Bennett had "filed his appeal with the intention of costing Mr. Land more money in attorney's fees, and delaying the process of having to pay Mr. Land."

Bennett non-suited his separate fraud lawsuit against Land in May 2013. One month later, the First Court of Appeals affirmed the trial court's judgment confirming the arbitration award in favor of Land. *See Bob Bennett & Assocs., P.C. v. Land,* No. 01–12–00795–CV, 2013 WL 2445369 (Tex.App.—Houston [1st Dist.] June 4, 2013, pet. denied). The appellate court held that Bennett had not timely asserted in the trial court his statutory grounds for vacating the arbitration award, and that he had not shown a gross mistake by the arbitrators. The court also denied Land's request for Rule 45 sanctions. Bennett filed a motion for rehearing and en banc reconsideration, which was denied. Land sought to withdraw the cash bond at this point but was unable to do so.

Bennett then appealed the arbitration judgment to the Supreme Court of Texas. Bennett argued in his petition for review that the arbitration was void ab initio because Land was not mentally capable of entering into a contract. Bennett asked the supreme court to "order that Gary Land's competency be determined prior to any further proceedings." The supreme court denied Bennett's petition in February 2014. At this point, according to Bennett, Land was able to withdraw the money he had been awarded in the January 2012 arbitration.

Land filed a grievance against Bennett with the Commission for Lawyer Discipline. The Commission eventually filed a disciplinary petition against Bennett, alleging violations of Rules 1.15(d) and 3.02 of the Texas Disciplinary Rules of Professional Conduct. The supreme court appointed a judge to hear the case, which proceeded to a bench trial. At the conclusion of the trial, the trial court found that Bennett had violated both rules and ordered that Bennett be disbarred as a result of his conduct. This appeal followed.

## ANALYSIS

### I. The evidence is legally insufficient to support the trial court's conclusion that Bennett violated Rule 1.15(d).

In his first issue and in the second part of his fifth issue, Bennett argues that the evidence is legally and factually insufficient to support the trial court's conclusion that he violated Rule 1.15(d) of the Texas Disciplinary Rules of Professional Conduct by failing to refund an advance payment of legal fees that had not been earned.

#### A. Standard of review

When an appellant attacks the legal sufficiency of an adverse finding on an issue on which he did not have the burden

■■■■■■■■■■■■■■■■■■■

of proof, the appellant must demonstrate on appeal that there is no evidence to support the adverse finding. *Univ. Gen. Hosp., L.P. v. Prexus Health Consultants, LLC,* 403 S.W.3d 547, 550 (Tex.App.— Houston [14th Dist.] 2013, no pet.). In conducting a legal sufficiency review, we must consider the evidence in the light most favorable to the appealed finding and indulge every reasonable inference that supports it. *Id.* at 550–51 (citing *City of Keller v. Wilson,* 168 S.W.3d 802, 821–22 (Tex.2005)). The evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the decision under review. *Id.* at 551. This Court must credit favorable evidence if a reasonable trier of fact could, and disregard contrary evidence unless a reasonable trier of fact could not. *Id.* The trier of fact is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Id.*

■ When a party challenges the factual sufficiency of the evidence supporting a finding on which he did not have the burden of proof, we may set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402, 407 (Tex.1998); *Nip v. Checkpoint Sys., Inc.,* 154 S.W.3d 767, 769 (Tex.App.—Houston [14th Dist.] 2004, no pet.) In reviewing the factual sufficiency of the evidence, we must examine the entire record, considering the evidence both in favor of and contrary to the challenged finding. *See Ellis,* 971 S.W.2d at 406–07; *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). The amount of evidence necessary to affirm is far less than the amount necessary to reverse a judgment. *GTE Mobilnet of S. Tex. Ltd. P'ship v. Pascouet,* 61 S.W.3d 599, 616 (Tex.App.—Houston [14th Dist.] 2001, pet. denied).

This Court is not a factfinder. *Ellis,* 971 S.W.2d at 407. Instead, the trier of fact, in this case the trial court, is the sole judge of the credibility of the witnesses and the weight to afford their testimony. *Pascouet,* 61 S.W.3d at 615–16. Therefore, we may not pass upon the witnesses' credibility or substitute our judgment for that of the trial court, even if the evidence would also support a different result. *Id.* If we determine that the evidence is factually insufficient, we must detail the evidence relevant to the issue and state in what regard the contrary evidence greatly outweighs the evidence in support of the challenged finding; we need not do so when we affirm. *See Gonzalez v. McAllen Med. Ctr., Inc.,* 195 S.W.3d 680, 681 (Tex. 2006) (per curiam).

**B. There is no evidence that, at the time Land terminated Bennett's representation, Bennett failed to refund an advance payment of legal fees that had not been earned.**

■ Rule 1.15(d) of the Texas Disciplinary Rules of Professional Conduct provides: "Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as ... refunding any advance payments of fee that has not been earned." Tex. Disciplinary Prof'l Conduct R. 1.15(d), *reprinted in* Tex. Gov't Code Ann. tit. 2, subtit. G, app. A (West 2013) (Tex. State Bar R. art. X, § 9). At the conclusion of the bench trial, the trial court signed findings of fact and conclusions of law. Relevant to this issue is the trial court's first finding: "Upon termination of [Bennett's] representation of Gary O. Land, [Bennett] failed to refund an advance payment of fee that had not been earned." Based on this finding, the court concluded that Bennett violated Rule 1.15(d).

Bennett argues there is no evidence to support the trial court's finding, and we agree. The evidence relevant to this finding is undisputed:

(1) Land retained Bennett as his attorney and paid him a $50,000 retainer;

(2) Bennett billed Land a total of $70,998.38 in legal fees and expenses;

(3) Bennett applied the $50,000 retainer to that amount and invoiced Land the remaining amount, $20,998.38;

(4) Land terminated Bennett's legal representation on August 3, 2011 and sought a reduction in Bennett's bill and a refund of at least $35,000;

(5) the arbitration award in favor of Land, which required Bennett to pay Land $27,500, was confirmed by the district court on July 23, 2012.

During oral argument, the Commission conceded that the amount of legal fees Bennett had earned was in dispute until the arbitration award was confirmed by the district court. The Commission also stated that it was only at this point in time that Bennett violated Rule 1.15(d).

As explained above, however, the trial court found that Bennett's failure to refund an advance payment of fee that had not been earned occurred "[u]pon termination of [Bennett's] representation" of Land, which was on August 3, 2011. Because the question whether the fee had been earned was not settled until July 2012 at the earliest, there is no evidence that on August 3, 2011, Bennett failed to return an advance payment of fee that had not been earned.

We therefore hold that the evidence is legally insufficient to support the trial court's finding that Bennett failed to refund an advance payment of fee that had not been earned at the time Land terminated Bennett's representation. *See*

*Comm'n for Lawyer Discipline v. Guajardo*, No. 01–11–00824–CV, 2012 WL 5545090, at *3 (Tex.App.—Houston [1st Dist.] Nov. 15, 2012, no pet.) (mem.op.) (affirming grant of directed verdict because there was no evidence that attorney failed to refund unearned fee). Because there are no other findings that could support the trial court's conclusion that Bennett violated Rule 1.15(d), we sustain Bennett's first and (in part) fifth issues challenging the trial court's first finding of fact and first conclusion of law. We reverse the portion of the judgment concluding that Bennett violated Rule 1.15(d).

## II. Bennett has not shown error in the trial court's conclusion that he violated Rule 3.02.

In his second, third, and fourth issues and the first part of his fifth issue, Bennett challenges the trial court's conclusion that he violated Rule 3.02 of the Texas Disciplinary Rules of Professional Conduct. Rule 3.02 provides that "[i]n the course of litigation, a lawyer shall not take a position that unreasonably increases the costs or other burdens of the case or that unreasonably delays resolution of the matter." Tex. Disciplinary Prof'l Conduct R. 3.02. At the conclusion of the bench trial, the trial court made findings that Bennett, in the course of his litigation with Land, took positions that (1) unreasonably increased the cost or other burdens of the case; and (2) unreasonably delayed the resolution of the matter. The trial court then concluded that Bennett violated Rule 3.02.

### A. Rule 3.02 applies to Bennett's conduct.

Bennett argues in his second issue that Rule 3.02 does not apply to his conduct in his dispute with Land because he was acting as a party or litigant, not as an attorney. When a party challenges the trial court's construction of a statute or

application of the law, the standard of review is de novo. *Foley v. Capital One Bank, N.A.,* 383 S.W.3d 644, 647 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

■ In addressing other responsibilities that a lawyer has as an advocate under the Disciplinary Rules, courts have recognized that those responsibilities also apply when the lawyer is not acting on behalf of a client. *See Diaz v. Comm'n for Lawyer Discipline,* 953 S.W.2d 435, 438 (Tex. App.—Austin 1997, no writ) (concluding that Rule 3.03 obligation of candor toward the tribunal applies to conduct by attorney acting as a party); *see also* Tex. Disciplinary Prof'l Conduct R. 8.04(a)(1) (stating that lawyer shall not violate the Texas Disciplinary Rules of Professional Conduct "whether or not such violation occurred in the course of a client-lawyer relationship"); *Cohn v. Comm'n for Lawyer Discipline,* 979 S.W.2d 694, 697 (Tex.App.—Houston [14th Dist.] 1998, no pet.). We need not decide whether this holding applies to Rule 3.02, however, because undisputed evidence shows that Bennett was not only a party but also acted as an attorney representing himself and his law firm in the dispute with Land. Bennett signed the notice that both Bob Bennett and Bob Bennett & Associates, P.C. were appealing from the district court's judgment confirming the arbitration award. In a brief filed in the appeal, Bennett identified himself as the attorney of record for the appellants. Therefore, the trial court did not err when it determined that Rule 3.02 applied to Bennett's conduct. We overrule Bennett's second issue.

**B. Bennett contractually agreed that an arbitration award would not be subject to appeal.**

Bennett argues in his third issue that he did not violate Rule 3.02 when he appealed the district court's judgment confirming the arbitration award in favor of Land because an appeal was permitted under the terms of the Agreement. We disagree.

**1. Standard of review**

■ Neither party has suggested that the Agreement is ambiguous, and we conclude that it is not. Construing the Agreement therefore presents a question of law. *Wolf Hollow I, L.P. v. El Paso Marketing, L.P.,* 472 S.W.3d 325, 333 (Tex.App.—Houston [14th Dist.] 2015, pet. filed). In construing a written contract, an appellate court's primary goal is to ascertain the true intentions of the parties as expressed in the instrument. *J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 229 (Tex.2003). Ordinarily, the writing alone is sufficient to express the parties' intentions, because it is the objective, not subjective, intent that controls. *See Matagorda Cnty. Hosp. Dist. v. Burwell,* 189 S.W.3d 738, 740 (Tex. 2006). When construing a contract, we give contract terms their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 662 (Tex.2005). We construe contracts from a utilitarian standpoint, bearing in mind the particular business activity sought to be served, and we avoid, when possible and proper, a construction that is unreasonable, inequitable, or oppressive. *Frost Nat'l Bank v. L & F Distrib., Ltd.,* 165 S.W.3d 310, 312 (Tex.2005). We examine and consider the entire writing in an effort to harmonize and give effect to all provisions of the contract so that none will be rendered meaningless. *J.M. Davidson, Inc.,* 128 S.W.3d at 229.

■ Courts are not authorized to rewrite agreements to insert provisions parties could have included or to imply terms for which they have not bargained. *Tenneco, Inc. v. Enterprise Prods. Co.,* 925

S.W.2d 640, 646 (Tex.1996). In other words, courts cannot make, or remake, contracts for the parties. *HECI Expl. Co. v. Neel*, 982 S.W.2d 881, 888 (Tex.1998). We also bear in mind Texas's fundamental public policy in favor of a broad freedom to contract, which allows parties to allocate risks as they see fit as long as their agreement does not violate the law or public policy. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 129 (Tex.2004); *BP Oil Pipeline Co. v. Plains Pipeline, L.P.*, 472 S.W.3d 296, 302 (Tex.App.—Houston [14th Dist.] 2015, pet. filed).

### 2. The Agreement prohibited Bennett from appealing the confirmed arbitration award.

▇ As set out above, the Agreement provides that Land and Bennett "agree that the arbitrator's decision in any such arbitration shall be binding, conclusive and non-appealable pursuant to the Rules and Regulations of the Houston Bar Association Fee Dispute Committee." The Agreement also provides "that arbitration may result in the client's waiver of significant rights, such as . . . the loss of the right to appeal."

▇ Despite this plain language foreclosing an appeal, Bennett makes a multistep argument that he still had the right to appeal the confirmed arbitration award: (1) the Agreement invoked the Rules and Regulations of the Houston Bar Associa-

tion Fee Dispute Committee (the "Fee Dispute Rules"); (2) Rule 8.02 of the Fee Dispute Rules allows an arbitration award to "be reviewed by petition to a court having jurisdiction in accordance with the provisions of the Texas Arbitration Act;" and (3) this reference to the Texas General Arbitration Act incorporated into the Agreement section 171.098(a)(3) of the Act, which provides that a party may appeal an order confirming or denying confirmation of an arbitration award.[1] *See* Tex. Civ. Prac. & Rem.Code Ann. § 171.098(a)(3) (West 2011).

We conclude that Bennett's proposed construction of the Agreement is not reasonable for several reasons. First, Bennett's construction renders meaningless the provisions making an arbitration award conclusive and non-appealable and warning the client about loss of the right to appeal. *See Lyda Swinerton Builders, Inc. v. Cathay Bank*, 409 S.W.3d 221, 232 (Tex.App.—Houston [14th Dist.] 2013, pet. denied) ("This construction is unreasonable because it would essentially render the release meaningless."); *Gastar Expl. Ltd. v. U.S. Specialty Ins. Co.*, 412 S.W.3d 577, 584 (Tex.App.—Houston [14th Dist.] 2013, pet. denied) (rejecting insurer's proposed construction of policy because it would not give full effect to the parties' agreement).

Second, Bennett's construction is not reasonable because it requires the inser-

---

1. Bennett did not argue below, and does not assert here, that a contractual waiver of the statutory right to appeal a trial court's judgment confirming an arbitration award is unenforceable (either in all cases or when the award is challenged on certain grounds). We agree that public policy does not prohibit the enforcement of such a waiver. *See Aguilar v. Abraham*, 588 S.W.2d 599, 601 (Tex.App.—El Paso 1979, writ ref'd n.r.e.) ("It is settled law that a common law arbitration agreement may provide that there is to be no right of

appeal."); *see also MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 827–830 (10th Cir.2005); *cf. Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 95–96 (Tex.2011) (recognizing parties' ability to restrict arbitrator's authority and expand judicial review by contract). Instead, Bennett argues that the right to appeal has not been waived in this particular contract. We address only the particular contractual language presented here; we do not address whether the disciplinary rules would be violated by attempted appeals of orders or judgments that are non-appealable for other reasons.

tion of additional language into the Agreement and the Fee Dispute Rules it references. Those rules allow an arbitration award to be confirmed and converted into an enforceable judgment by filing a petition in a court having jurisdiction in accordance with the provisions of the Texas Arbitration Act.[2] As in any other civil action, a petition (or application) to confirm an arbitration award is filed in a trial court, not in a court of appeals. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 171.082, 171.098 (West 2011); Tex.R. Civ. P. 22, 78. The only reference to appeal in the Fee Dispute Rules concerns an award of fees or costs on appeal "if applicable." *See* n.3, *supra.* Fees or costs should not have been applicable here given the plain language of the Agreement making an award "non-appealable." We are not authorized to rewrite the parties' contract under the guise of interpreting it, even if one of the parties has come to dislike one of its provisions. *See Gastar Expl. Ltd.,* 412 S.W.3d at 586; *Calpine Producer Servs., L.P. v. Wiser Oil Co.,* 169 S.W.3d 783, 787 (Tex. App.—Dallas 2005, no pet.).

▪ Third, Bennett's construction is not reasonable because a lawyer has a duty to inform a client of all material facts, and this duty requires that the lawyer's fee agreement be clear. *Fleming v. Kinney,* 395 S.W.3d 917, 925 (Tex.App.— Houston [14th Dist.] 2013, pet. denied); *see Royston, Rayzor, Vickery, & Williams, LLP v. Lopez,* 467 S.W.3d 494, 507 (Tex. 2015) (Guzman, J., concurring) (observing that attorney has ethical responsibility to fully and fairly discuss arbitration agreement with client). Bennett's construction, which relies on a reference in the Fee Dispute Rules to the Texas General Arbitration Act to resurrect a right to appeal that is foreclosed by the plain language of the Agreement, would not be clear to a reasonable client. We overrule Bennett's third issue.

**C. The appellate opinion declining to impose sanctions on Bennett does not establish compliance with Rule 3.02.**

▪ Bennett contends in his fourth issue that the First Court of Appeals' decision not to sanction him for filing a frivolous appeal forecloses the conclusion that he violated Rule 3.02 in pursuing that appeal. In that appeal, Land asked the appellate court to sanction Bennett under Rule 45 of the Texas Rules of Appellate Procedure for filing a frivolous appeal of the judgment confirming the arbitration award. *See* Tex.R.App. P. 45 ("If the court of appeals determines that an appeal is frivolous, it may . . . award each prevailing party just damages."). The court of appeals declined to impose sanctions. *See Bob Bennett & Assoc., P.C.,* 2013 WL 2445369 at *7 ("While we disagree with the merits of the appeal, after considering the record and briefs, we do not conclude that the circumstances in this case warrant sanction.").

In Bennett's view, this denial of sanctions means that the appellate court determined Bennett had reasonable grounds to believe the case could be reversed on ap-

---

**2.** Rule 8.02 of the Houston Bar Association Rules and Regulations of the Fee Dispute Committee, entitled "Petition to Confirm, Correct, or Vacate the Decision," provides in relevant part:

(a) The panel's decision may be reviewed by petition to a court having jurisdiction in accordance with the provisions of the Texas Arbitration Act.

(b) The party obtaining judgment confirming, correcting, or vacating the decision shall be the prevailing party. Such a party shall under these Rules have the right to seek from the Court reasonable attorney's fees and costs including, if applicable, fees or costs on appeal, incurred in obtaining confirmation, correction, or vacating of the award.

peal and held that the appeal was not frivolous. As a result of this determination, Bennett argues, his appeal of the confirmed arbitration award cannot provide grounds for disbarment.

We disagree with both of Bennett's suggested conclusions. The First Court of Appeals never stated that Bennett had reasonable grounds to believe the case could be reversed on appeal and did not hold that his appeal was not frivolous. Nor did it address the question whether the parties' agreement prohibited the appeal, which evidently was not raised in that appeal. Instead, all that can be gleaned from the opinion is that the appellate court, in the exercise of its discretion, decided not to impose sanctions. *Id.* It is possible that the court determined Bennett's appeal was frivolous, but decided, in the exercise of its discretion, not to impose sanctions under Rule 45. *See* Tex.R.App. P. 45 (providing that an appellate court *may* levy sanctions after objectively determining that an appeal is frivolous) (emphasis added); *Glassman v. Goodfriend,* 347 S.W.3d 772, 782 (Tex.App.—Houston [14th Dist.] 2011, pet. denied) (en banc) ("Rule 45 does not mandate that this court award just damages in every case in which an appeal is frivolous; rather the decision to award such damages is a matter within this court's discretion, which we exercise with prudence and caution.").

Additionally, the failure to grant appellate sanctions does not bar the disciplinary action because the two proceedings do not involve the same parties, issues, or behavior. *See Hudson v. Wakefield,* 711 S.W.2d 628, 630 (Tex.1986) (addressing law of the case doctrine); *Willie v. Commission for Lawyer Discipline,* No. 14–13–00872–CV, 2015 WL 1245965, at *8 (Tex.App.—Houston [14th Dist.] March 17, 2015, pet. denied) (mem.op.) (addressing doctrines of

res judicata and collateral estoppel). First, the Commission was not a party in the Land litigation. Second, the two proceedings involve different issues: the Land litigation was a fee dispute between an attorney and a former client while the present case addresses whether Bennett's actions violated the Disciplinary Rules. Finally, many of Bennett's actions that the Commission argues unreasonably increased Land's costs and unreasonably delayed resolution of the case in violation of Rule 3.02 were not before the First Court of Appeals when it declined to impose sanctions. These actions include: (1) Bennett's motion for rehearing and en banc reconsideration in the appellate court and his petition for review to the supreme court—all raising grounds not presented in the original appeal; (2) Bennett's efforts to frustrate Land's collection attempts without superseding the judgment; and (3) Bennett's filing of a separate lawsuit against Land alleging that Land fraudulently induced Bennett into entering the Agreement. We overrule Bennett's fourth issue.

**D. The evidence is legally and factually sufficient to support the trial court's conclusion that Bennett violated Rule 3.02.**

In the first part of his fifth issue, Bennett asserts that the evidence is legally and factually insufficient to support trial court's findings of fact and conclusion of law that he violated Rule 3.02 of the Texas Disciplinary Rules of Professional Conduct by unreasonably increasing the cost of the fee litigation and unreasonably delaying its resolution.[3] In making his sufficiency argument, Bennett repeats many of the same arguments he raised above. These include (1) he had the right to appeal under the terms of the Agree-

---

3. We address this issue under the standard of review set out in Part I.A. above.

ment and therefore had the right to withhold Land's money while moving for rehearing and en banc reconsideration and petitioning the supreme court for review; and (2) the First Court of Appeals determined that his appeal was not frivolous or sanctionable. For the same reasons, we hold that they do not establish that the evidence is legally and factually insufficient to support the trial court's determination that Bennett violated Rule 3.02.

Bennett also argues that the trial court could not consider his delay in superseding the judgment during his appeal because the delay was not prohibited by any civil procedure or ethical rule. Instead, Bennett contends, the delay simply left Land able to execute on the judgment. As discussed in the background section, however, Land did attempt to execute on the judgment. The record includes evidence that Bennett resisted the attempt for several months by unsuccessfully claiming an exemption and objecting to the appointment of a receiver.

In his final sufficiency argument, Bennett asserts that his separate lawsuit against Land was not an ethical violation and therefore cannot support the trial court's determination that he violated Rule 3.02. In Bennett's view, he had the right to file a separate lawsuit against his former client because "a lawyer has very broad discretion to determine technical and legal tactics." Tex. Disciplinary Rules Prof'l Conduct R. 1.02, cmt. 1. The trial court did not find, however, that Bennett's filing of a separate lawsuit (or, indeed, any other specific conduct by Bennett) was an ethical violation standing alone. We instead conclude, viewing the evidence under the appropriate standard of review, that the trial court reasonably could have found that Bennett's filing of a separate lawsuit alleging Land fraudulently induced Bennett into accepting Land as a client was

one part of Bennett's unreasonable efforts to increase the burden or delay the resolution of the dispute, which should have ended with confirmation of the arbitration award.

We hold the evidence is legally and factually sufficient to support the trial court's second and third findings of fact and its second conclusion of law that Bennett violated Rule 3.02. We overrule Bennett's second, third, and fourth issues and the part of his fifth issue addressing Rule 3.02, and we affirm the portion of the judgment concluding that Bennett violated Rule 3.02.

## III. Bennett has not shown that the trial court committed reversible error in excluding Bennett's witnesses from testifying during the misconduct phase of trial.

Bennett contends in his sixth issue that he is entitled to a new trial on whether he violated the disciplinary rules because the trial court erroneously excluded certain witnesses from testifying during the misconduct phase of the trial. Bennett also asserts that the trial judge erred when she left the courtroom during his offers of proof related to the testimony of the excluded witnesses. We address each contention in turn.

### A. Standard of review

We review a trial court's exclusion of expert testimony for abuse of discretion. *K–Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex.2000). The decision to admit or exclude evidence lies within the sound discretion of the trial court. *Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex.2007). A trial court exceeds its discretion if it acts in an arbitrary or unreasonable manner or without reference to guiding rules or principles. *Barnhart v. Morales*, 459 S.W.3d 733, 742 (Tex.App.—Houston [14th Dist.]

2015, no pet.) (citing *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex.2002)). When reviewing matters committed to the trial court's discretion, a reviewing court may not substitute its own judgment for that of the trial court. *Id.* Thus, the question is not whether this Court would have admitted the evidence. Rather, an appellate court will uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling, even if that ground was not raised in the trial court. *Id.* Therefore, we examine all bases for the trial court's decision that are suggested by the record or urged by the parties. *Id.*

▇▇▇▇ A party seeking to reverse a judgment based on evidentiary error must prove that the error probably resulted in rendition of an improper judgment. *Neely v. Comm'n for Lawyer Discipline*, 302 S.W.3d 331, 339 (Tex.App.—Houston [14th Dist.] 2009, pet. denied). To determine whether evidentiary error probably resulted in the rendition of an improper judgment, an appellate court reviews the entire record. *Barnhart*, 459 S.W.3d at 742 (citing *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex.2001)).

**B. The trial court did not abuse its discretion in excluding expert testimony on legal principles and their application.**

Bennett complains in his sixth issue about the trial court's exclusion of his expert witnesses—Lillian Hardwick, Don Karotkin, Dan Naranjo, and Anthony Griffin—from testifying during the misconduct phase of Bennett's trial. Bennett proffered each witness to testify regarding the legal construction of the Texas Disciplinary Rules of Professional Conduct and to opine that Bennett's conduct did not violate either Rule 1.15(d) or Rule 3.02. In Bennett's view, the trial court abused its discretion because the experts' testimony, while not required, could have aided the

trial court in interpreting the ethical rules at issue.

▇▇▇▇ No witness is allowed to offer an opinion on a pure question of law. *Mega Child Care, Inc. v. Texas Dep't of Protective & Regulatory Servs.*, 29 S.W.3d 303, 309 (Tex.App.—Houston [14th Dist.] 2000, no pet.). An expert may, however, state an opinion on a mixed question of law and fact if the opinion is limited to the relevant issues and is based on proper legal concepts. *Greenberg Traurig of New York, P.C. v. Moody*, 161 S.W.3d 56, 94 (Tex.App.—Houston [14th Dist.] 2004, no pet.). An issue involves a mixed question of law and fact when a standard or measure has been fixed by law and the question is whether the person or conduct measures up to that standard. *Mega Child Care, Inc.*, 29 S.W.3d at 309. Where the trier of fact is equally competent to form an opinion regarding an issue of ultimate fact, the expert's testimony on those issues may be excluded. *Id.* at 310 n. 2.

▇▇▇ We conclude that the trial court did not abuse its discretion when it prohibited Bennett's legal experts from testifying regarding the legal construction of the Texas Disciplinary Rules of Professional Conduct. An opinion on the proper construction of those rules is an opinion on a pure question of law. *See Greenberg Traurig of New York, P.C.*, 161 S.W.3d at 95 ("It is not the role of the expert witness to define the particular legal principles applicable to a case; that is the role of the trial court."); *Goldstein v. Comm'n for Lawyer Discipline*, 109 S.W.3d 810, 815 (Tex.App.—Dallas 2003, pet. denied) (stating that "interpretation of the disciplinary rules is a question of law for the trial court").

The trial court also did not abuse its discretion when it prevented Bennett's experts from testifying on the mixed question of law and fact of whether Bennett's

conduct violated Rules 1.15(d) and 3.02. Resolution of this question required the application of legal principles embodied in the disciplinary rules to Bennett's behavior. The trial judge, presumed to have specialized competency in all areas of the law and a legal expert herself, "was perfectly capable of applying the law to the facts and reaching a conclusion without benefit of expert testimony from another attorney." *Holden v. Weidenfeller*, 929 S.W.2d 124, 134 (Tex.App.—San Antonio 1996, writ denied). We hold that the trial court did not abuse its discretion when it prevented Bennett's experts from testifying on the question whether Bennett's conduct violated rules 1.15(d) and 3.02 of the Texas Disciplinary Rules of Professional Conduct.

### C. Bennett has shown no harm from the exclusion of character and reputation testimony during the misconduct phase of trial.

Bennett also asserts that the trial court erred in excluding Bennett's proffered witnesses listed above from testifying during the misconduct phase of trial regarding Bennett's character, reputation in the legal community, and their belief that Bennett "was not a threat to the legal community." The Commission responds that such testimony was not admissible in the misconduct phase to prove that Bennett acted in conformity with his character, citing Texas Rule of Evidence 404(a).

 Even if we assume that the trial court erred when it excluded the character evidence from the misconduct phase of trial, a question we need not decide, Bennett must also show that he was harmed by the exclusion. Tex.R.App. P. 44.1(a); *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex.2011) (stating that harmless error rule applies to all errors). We conclude that the error, if any, was harmless because each of the witnesses—Hardwick,

Karotkin, Naranjo, and Griffin—was allowed to testify during the sanctions phase of the trial regarding Bennett's character, reputation in the legal community, and each witness's respective belief that Bennett "was not a threat to the legal community." *See Schreiber v. State Farm Lloyds*, 474 S.W.3d 308, 317–18 (Tex. App.—Houston [14th Dist.] 2015, pet. filed) (concluding that trial court's erroneous exclusion of evidence was harmless because trier of fact heard similar evidence throughout the trial).

### D. Bennett did not preserve his complaint regarding the trial judge vacating the bench during his offers of proof.

 Bennett also complains in his sixth issue about the trial judge vacating the bench during his expert witness offers of proof We hold Bennett did not preserve this argument for appellate review because he did not object to the trial judge's absence. Tex.R.App. P. 33.1(a); *see In re Estate of Parrimore*, No. 14–14–00820–CV, 2016 WL 750293, at *12 (Tex.App.—Houston [14th Dist.] Feb. 25, 2016, n.p.h.) (mem.op.) (holding appellants did not preserve their complaint regarding trial court's comments for appellate review because they failed to object at time comments were made).

Having rejected each argument Bennett raised in his sixth issue, we overrule that issue.

### CONCLUSION

The trial court disbarred Bennett based on its legal conclusions that he violated both Rule 1.15(d) and Rule 3.02 of the Texas Disciplinary Rules of Professional Conduct. We have determined that the evidence is legally insufficient to support the trial court's conclusion that Bennett violated Rule 1.15(d), and we have reversed that portion of the judgment. Nor-

mally, we render judgment in favor of the appellant when we sustain a legal sufficiency point. *Guevara v. Ferrer*, 247 S.W.3d 662, 670 (Tex.2007). That is not the appropriate outcome here because we have also held that there is legally and factually sufficient evidence to support the trial court's conclusion that Bennett violated Rule 3.02, and we have affirmed that portion of the judgment. We hold, therefore, that the appropriate remedy is to reverse the trial court's sanction disbarring Bennett and remand the case to the trial court for reconsideration of the appropriate sanction to be imposed on Bennett as a result of his violation of only Rule 3.02 of the Texas Disciplinary Rules of Professional Conduct.[4] Tex.R.App. P. 44.1(b); *Barker v. Eckman*, 213 S.W.3d 306, 315 (Tex.2006).

---

4. Because we are reversing and remanding for reconsideration of the appropriate sanction to be levied against Bennett based on a violation of a single disciplinary rule, we need not reach Bennett's seventh issue arguing that the trial court imposed a sanction—disbarment—not requested by the Commission.