**Affirmed and Memorandum Opinion filed July 7, 2016.**



In The

# Fourteenth Court of Appeals

## NO. 14-15-00291-CV

### ERIC E. PEREZ AND EDMUNDO PEREZ, Appellants

### V.

### LE PRIVE ENTERPRISES, L.L.C. D/B/A MEKANO LIVE & GRILL AND MANUEL ARELLANO, Appellees

**On Appeal from the 127th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2013-74140**

## M E M O R A N D U M   O P I N I O N

Appellants Eric and Edmundo Perez appeal the trial court's judgment finding that they have no ownership interest in appellee Le Prive Enterprises, L.L.C. and ordering them to pay $16,500 in damages for conversion to the company. Appellants also challenge the evidentiary sufficiency of the trial court's award of only $2,510 on their counterclaims. We affirm the judgment of the trial court.

## Factual and Procedural Background

Appellants Eric and Edmundo Perez are brothers. Appellee Manuel Arellano is the Perez brothers' cousin. The three relatives agreed to open a nightclub together. Eric filed a certificate of formation with the Texas Secretary of State forming appellee Le Prive Enterprises, L.L.C. ("Le Prive"), which would do business as Mekano Live & Grill, a nightclub. Despite the fact that Eric filed the certificate of formation, it bore the name of only one individual, Manuel Arellano, who was designated as the organizer, managing member, and registered agent of the L.L.C. A certificate of amendment was later filed with the Texas Secretary of State deleting Arellano as the managing member and substituting Guillermo Altamirano as the "sole Manager of the Limited Liability Company." Altamirano became involved in the management of the business, including the maintenance of the club's records and its liquor license.

The nightclub opened in March 2013. In November 2013, Arellano called Edmundo to notify the Perez brothers that the locks had been changed and Edmundo and Eric were "out of the club." In December 2013, Arellano and Le Prive filed their "Original Petition for Injunctive and Monetary Relief," alleging that, after the lockout, the Perez brothers had removed "furniture, equipment, and liquor inventory totaling $160,000." Arellano and Le Prive sought to enjoin the brothers from entering the club property and from exercising dominion and control over the furniture, equipment, and inventory that had been removed from the club. Arellano and Le Prive sought damages for conversion as well as damages under the Texas Theft Liability Act.[1] The trial court granted a temporary restraining order and then a temporary injunction ordering the Perez brothers to return the items removed from the club.

---

[1] Tex. Civ. Prac. & Rem. Code § 134.001 *et seq.* (West 2015).

2

The Perez brothers filed a general denial in response to the petition and countersued for breach of contract, breach of fiduciary duty, conversion, constructive fraud, fraud, negligent misrepresentation, tortious interference with an existing contract, and tortious interference with a prospective contract. These claims allegedly stemmed from a "partnership agreement" that had been formed among the three relatives, under which each would make initial capital investments in the business and then share profits from the nightclub. The Perez brothers requested actual damages, expectation interest, lost profits, damages for loss of business reputation, damages for loss of the business's "credit reputation," loss of good will, and exemplary damages. The brothers also sought a judgment declaring that:

> 1. The parties entered into a partnership agreement in connection with the Latin night club. Manuel Arellano agreed to a partnership with Eric and Edmundo Perez which provided, in pertinent part, that the profits and the ownership of the club would be as follows:
>     A. Manuel Arellano – 35%
>     B. Eric Perez – 35%
>     C. Edmundo Perez – 30%
> 2. The parties also agreed that the initial capital investment would be contributed as follows:
>     A. Manuel Arellano – 70%
>     B. Eric Perez – 30%
> The parties agreed to this pro rata share of the capital contribution and that Edmundo Perez would actively manage the club.
> 3. That Eric Perez, Edmundo Perez, and Manuel Arellano are all owners of the Le Prive Enterprises, LLC with ownership as follows: 35% - Manuel Arellano, 35% - Eric Perez and 30% - Edmundo Perez.

The court held a bench trial and issued its final judgment on December 18, 2014. The judgment stated: "This Court finds that the Plaintiff Manuel Arellano is the sole owner of Le Prive Enterprises, LLC, D/B/A Mekano Live & Grill." The trial court found that Arellano and Le Prive failed to prevail on the merits of their

3

Texas Theft Liability Act Claim, but awarded them $16,500 as conversion damages.[2] The trial court also ordered Le Prive to pay Eric $2,510 in damages. Additionally, the trial court awarded $9,500 in attorney's fees to the Perez brothers. The trial court did not file or issue any findings of fact or conclusions of law.

The Perez brothers moved for reconsideration and a new trial. The motion was denied. The Perez brothers timely filed this appeal.

**Analysis**

The Perez brothers assert three issues on appeal, arguing that the trial court erred in: (1) finding that the Perez brothers have no ownership interest in Le Prive; (2) limiting the award for Eric to $2,510 and not awarding any damages to Edmundo; and (3) awarding $16,500 in damages for conversion to Le Prive.

As an initial matter, we overrule the Perez brothers' second issue due to inadequate briefing. The Perez brothers do not articulate a specific challenge to the trial court's judgment; they state only that the trial court "erred in concluding that the just amount due and owing to Eric Perez was $2,510." A complaint on appeal "must address specific error and not merely attack the trial court's order in general terms." *McGuire v. McGuire*, 4 S.W.3d 382, 385 (Tex. App.—Houston [14th Dist.] 1999, no pet.). The Perez brothers' briefing does not address any specific errors and is merely conclusory. The brothers do not argue a particular theory of recovery or specify which of the eight causes of action raised as counterclaims entitled them to relief exceeding the trial court's $2,510 award. The Perez brothers state that "trial testimony" demonstrates that they are entitled to as

---

[2] The trial court's judgment did not explicitly state that the $16,500 award was for Le Prive's conversion claims. However, Le Prive only requested damages for common-law conversion and statutory damages under the Theft Liability Act. Because the trial court denied damages under the Act, we assume that the damages awarded were for conversion.

4

much as $160,000 in damages, but do not provide the court with any citations to the reporter's record corresponding to any such testimony. The brothers also state that "the receipts in Defendant's Ex. 8 & 9" demonstrate their right to relief. Exhibits 8 and 9 contain scores of receipts, most of which do not contain any information about the purchaser or the purpose of the purchase. The brothers do not explain which of these receipts are relevant to their argument or how the receipts would support the award they seek. The brothers' briefing of this issue does not comply with the Rules of Appellate Procedure. *See* Tex. R. App. P. 38.1(i). Without proper briefing and argument, we cannot consider the Perez brothers' challenge. "This Court has no duty to search a voluminous record without guidance from appellant to determine whether an assertion of reversible error is valid." *Casteel–Diebolt v. Diebolt*, 912 S.W.2d 302, 305 (Tex. App.—Houston [14th Dist.] 1995, no writ). The failure to cite to relevant portions of the trial court record waives appellate review. *Id.* The issue is, therefore, waived. Having found briefing waiver on the Perez brothers' second issue, we turn to the brothers' first and third issues.

## A. The court's finding that Arellano is the sole owner of Le Prive

In their first issue, the Perez brothers argue that the trial court erred in finding that Arellano was the "sole owner" of Le Prive Enterprises, L.L.C. In challenging this finding, the brothers assert that they each have ownership interests in Le Prive that entitle them to a share of the company's profits. Much of the Perez brothers' argument appears to confuse the nature of partnerships and limited liability companies, which are distinct entities under Texas law. *Compare* Tex. Bus. Orgs. Code Ann. § 152.001 *et seq. with id.* § 101.001 *et seq.* (West 2012). The Perez brothers assert that they each have "ownership interests [as] partner[s] in the company" and argue that the "totality of the circumstances point[s] to the

5

existence of a partnership" under which Eric is entitled to a 35% share of the profits and ownership of the company and Edmundo is entitled to a 30% share of the same. The brothers acknowledge that this profit-sharing and ownership-interest scheme was not documented prior to the start of their business venture. However, the brothers argue that this court should still hold that a partnership existed among the relatives, under which the brothers each own a portion of Le Prive. In making their argument, the brothers rely on a set of unrelated statements of the law governing business organizations and contracts. The brothers argue that their alleged arrangement need not be written to be valid because: (1) the Texas Business Organizations Code provides for oral operating agreements among members of an L.L.C.; (2) the Texas Business Organizations Code allows people to become members of an L.L.C. after the L.L.C.'s certificate of formation is filed; (3) a partnership that is indefinite in duration falls outside of the ambit of the Statute of Frauds; and (4) "partial performance insulates [a] partnership agreement from Statute of Frauds."

Additionally, the Perez brothers make three different requests for relief in the course of their briefing on this issue: reversal of the trial court's finding that Arellano was the sole owner of Le Prive; rendition "that the profits and the ownership of the club would be as follows: (1) Manuel Arellano – 35%; (2) Eric Perez – 35%; (3) Edmundo Perez – 30 %"; and reversal and rendition "that the Perez brothers have ownership rights." Considering the Perez brothers' request for rendition, we construe the issue as a challenge to the legal sufficiency of the trial court's finding that Arellano was the sole owner of Le Prive and we review the evidence accordingly. *See Dongsheng Huang v. Riverstone Residential Grp. (Alexan Piney Creek)*, No. 14-11-00009-CV, 2011 WL 6003949, at *1 (Tex. App.—Houston [14th Dist.] Dec. 1, 2011, pet. dism'd) (mem. op.). The Perez

6

brothers bore the burden of proof on their request for a declaratory judgment that they were owners of Le Prive. *Saba Zi Exploration, LP v. Vaughn*, 448 S.W.3d 123, 129 n. 11 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Therefore, in order to prevail on their legal sufficiency challenge, the brothers "must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of" their claim of company ownership. *Dow Chemical Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). The point of error should only be sustained if the brothers "conclusively establish" that they are co-owners of Le Prive. *Id.*

In order to conclusively establish that they are co-owners of Le Prive, the brothers must demonstrate that they are members of the company. *See* Tex. Bus. Orgs. Code Ann. § 1.002 (West 2012); *Davis v. Highland Coryell Ranch, LLC*, No. 07-15-00269-CV, 2016 WL 1238175, at *1 (Tex. App.—Amarillo March 28, 2016, pet. filed). "'Member' means . . . in the case of a limited liability company, a person who is a member or has been admitted as a member in the limited liability company under its governing documents." Tex. Bus. Orgs. Code Ann. §1.002(53)(A) (West 2012).

The brothers do not argue that they have become members of Le Prive by admission under Le Prive's governing documents. Rather, the brothers use this statute to argue that there "really is no requirement that the membership effective be recorded in writing" [sic]. The brothers go on to argue:

> Even if the Texas Business Organizations Code requires the partnership interest be documented in writing, the Partnership Dissolution Agreement satisfies any such writing requirement. The December 4, 2013 contract makes clear that the Perez brothers are members, and the document can reasonably be read to mean that the Perez brothers joined the limited liability company on the day the contract was signed. In fact, the four corners of the document make

7

clear that the parties had a partnership before the corporation was formed and that "said partnership is incorporated as Le Prive Enterprises, LLC."

Not only does the brothers' argument conflate three distinct business organizational forms—partnership, limited liability company, and corporation—it does not refer to any evidence that could plausibly support their claim. The "Partnership Dissolution Agreement" reads:

> This document is an agreement between partners Manuel Arellano, Erick [sic] E. Perez, and Edmundo Perez (said partnership is incorporated as Le Prive Enterprises, LLC, and is doing business as Mekano Live). Manuel Arellano owns 35% of Le Prive Enterprises, LLC doing business as Mekano Live, Erick E. Perez owns 35% of Le Prive Enterprises, LLC doing business as Mekano Live, and Edmundo Perez owns 30% of Le Prive Enterprises, LLC doing business as Mekano Live. There are no other persons who own an interest in said partnership. The partners agree to dissolve the partnership as follows:
>
> Erick E. Perez and Edmundo Perez hereby transfer all of their interest in the partnership known as Le Prive Enterprises, LLC doing business as Mekano Live to Manuel Arellano. Erick E. Perez and Edmundo Perez agree to return all the property that was removed from the business premises of Mekano Live to Manuel Arellano. Each partner agrees to release each partner from any and all civil liability concerning the partnership. Manuel Arellano does not want Erick E. Perez or Edmundo Perez prosecuted criminally.

This document is irrelevant to the issue of whether Eric and Edmundo Perez are members of Le Prive Enterprises, L.L.C. It is not a company record reflecting Eric and Edmundo's admission to the company. Because this document is the only specific evidence[3] the Perez brothers offer this court of their membership in the company, the brothers fail to conclusively establish that they are members, with

---

[3] The Perez brothers also cite generally in their briefing to their own trial testimony and that of Arellano. The brothers provide no record cites to any specific testimony; they only describe their own testimony as "consistent and unimpeachable" and Arellano's testimony as "inconsistent."

8

ownership interest, of Le Prive Enterprises, L.L.C. The brothers' legal sufficiency challenge to the trial court's ownership finding fails. We overrule the Perez brothers' first issue.

## B. The $16,500 conversion award to Le Prive

In their third and final issue, the Perez brothers argue that the trial court erred in awarding a judgment of $16,500 for conversion in favor of Le Prive. The brothers contend that there is no evidence, or insufficient evidence, to support the court's judgment, but do not specify whether they are requesting a review for legal sufficiency, factual sufficiency, or both. We therefore look to the brothers' request for relief, which asks that this court reverse and render that Le Prive take nothing. Considering this request, we construe the issue as a "no-evidence" challenge to the legal sufficiency of the trial court's finding of conversion and review the evidence accordingly. *See Dongsheng Huang*, 2011 WL 6003949, at *1.

When reviewing a verdict for legal sufficiency, we must "consider the evidence in the light most favorable to the appealed finding and indulge every reasonable inference that supports it." *Univ. Gen. Hosp., LP v. Prexus Health Consultants, LLC*, 403 S.W.3d 547, 550 (Tex. App.—Houston [14th Dist.] 2013, no pet.). We must credit favorable evidence if a reasonable trier of fact could, and disregard contrary evidence unless a reasonable trier of fact could not. *Id.* at 551. The trier of fact is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *Id.* When, as here, an appellant "attacks the legal sufficiency of an adverse finding on an issue on which he did not have the burden of proof, the appellant must demonstrate on appeal that there is no evidence to support the adverse finding." *Bennett v. Comm'n for Lawyer Discipline*, — S.W.3d—, No. 14-14-00470-CV, 2016 WL 1165783, at *4 (Tex. App.—Houston [14th Dist.] March 24, 2016, no pet.); *see Marshall v. Ripkowski*, No. 14-08-

9

00090-CV, 2009 WL 2589433, at \*2 (Tex. App.—Houston [14th Dist.] Aug. 25, 2009, no pet.) (mem. op.) (plaintiff has burden of proof on conversion claim). This court may sustain a no-evidence issue only if the record reveals one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence established conclusively the opposite of a vital fact. *Prexus*, 403 S.W.3d at 552. If more than a scintilla of evidence supports the challenged finding, the no-evidence challenge fails. *Haggar Clothing Co. v. Hernandez*, 164 S.W.3d 386, 388 (Tex. 2005). "More than a scintilla of evidence exists where the evidence supporting the finding, as a whole, rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Id.* (internal citations omitted).

In its original petition, Le Prive alleged that the Perez brothers had converted approximately $160,000 worth of "furniture, equipment, and liquor inventory." Although the trial court awarded a judgment in favor of Le Prive on this conversion claim, the judgment did not contain any specific findings detailing which property the court found was converted. "In the absence of any findings of fact or conclusions of law, a trial court's judgment will be upheld on any theory supported by the record, and any necessary findings of fact will be implied. *Rosemond v. Al-Lahiq*, 331 S.W.3d 764, 766 (Tex. 2011) (internal citations omitted). In order to award damages for conversion, the trial court must have found that:

> (1) the plaintiff owned, had legal possession of, or was entitled to possession of the property; (2) the defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with the plaintiff's rights; and (3) the defendant refused the plaintiff's demand

10

for return of property.

*Hunt v. Baldwin*, 68 S.W.3d 117, 131 (Tex. App.—Houston [14th Dist.] 2001, no pet.). We therefore imply these necessary findings in the trial court's judgment. As to the specific property converted, we assume that the court awarded damages for all three categories of property—furniture, equipment, and liquor inventory. The Perez brothers argue specifically that there is no evidence supporting a finding that they converted the club's furniture—sofas, tables, and lights—generators, or liquor inventory. We address each of the brothers' no-evidence challenges in turn.

**Furniture**

The brothers admit to removing furniture—sofas, tables, and lights—from the club, but assert that Le Prive's conversion claim should fail as to the furniture because Le Prive could not confirm whether the furniture belonged to the company or to the brothers. Because Le Prive prevailed on its conversion claim, we imply the necessary finding that Le Prive owned, had legal possession of, or was entitled to possession of the furniture and that the brothers exercised dominion and control over the furniture in an unlawful and unauthorized manner.

At trial, Eric made conflicting statements regarding his potential ownership of the furniture. First, Eric testified that he paid for "part of" the furniture. However, Eric later confirmed that the furniture was paid for out of a joint checking account owned by him and Arellano. Eric confirmed also that he had not personally deposited any of his own money into the checking account. Then, when asked whether it was correct that Arellano's money had been used to buy the tables, Eric said, "It was part my money." Edmundo also gave conflicting testimony regarding the ownership of the furniture. When asked whose property the sofas, tables, and lighting were, Edmundo testified, "It was ours. It was the corporations [sic]. It was our - - it was ours." Assuming that the "corporation"

11

Edmundo is referring to is Le Prive Enterprises, L.L.C., and crediting Eric's testimony that the checking account used to pay for the furniture consisted solely of Arellano's money, we conclude that there is more than a scintilla of evidence that the furniture belonged to Le Prive and that the brothers exercised dominion and control over the property in an unlawful and unauthorized manner. The brothers' no-evidence challenge as to the furniture fails.[4]

**Equipment**

The only pieces of equipment that the brothers mention in their brief are the club's generators. The brothers state that they did not remove any generators from the club and contend that there is no evidence in the record that they did. In considering this no-evidence challenge to a finding that the brothers did convert one or more generators,[5] we imply the necessary finding that the brothers assumed and exercised dominion and control over the generators in an unlawful and

---

[4] The only evidence the brothers specifically mention with regard to the furniture is the following testimony by Altamirano:

> Q. Sir, it's true that the personal property that was taken out of the business, you are not sure who owned it?
>
> A. I do know who the owner is.
>
> Q. It's true that you did know who owned the furniture, correct?
>
> A. No, I do know who the owners of - - the owner of the chairs, the furniture was.
>
> Q. And you didn't know who owned the lights?
>
> A. I also know who the owner of the lights was.

The brothers argue that this testimony calls into question the ownership of the furniture because "Altmirano . . . could not confirm whether the furniture belonged to the company or the Perez brothers." The testimony establishes only that Altamirano knew who the owner was; it does not establish that Le Prive did not own the furniture or that the brothers did own the furniture. Because this testimony is neither in favor of nor contrary to the trial court's finding, we disregard it as part of our analysis.

[5] It is not clear how many generators are at issue. The brothers refer to "*the* generator" and "*this* generator," but trial testimony and counsels' arguments at trial refer to "generator*s*" in the plural.

unauthorized manner.

Regarding the generators, Arellano testified the following:

Q. [by Le Prive's attorney] Mr. Arellano, can you tell me what we are looking at in Plaintiff's Exhibit 47?

A. These are the generators for the sign the business has.

Q. And at some point in time did the defendants [Perez brothers] threaten to come get them?

A. I think that, yes, that it had something to do with the message because the day that the judge - - the day they were to return the furniture, the judge ordered them to return the furniture, the next day the generators disappeared.

. . .

Q. And were the generators . . . removed?

A. Yes, they were cut on each side and they were pulled out.

Q. Was that to your knowledge after - - did you receive the text message warning that this was going to happen after the lawsuit was filed?

A. Yes, according to him, he was going to remove the entire sign.

Q. When you say "him," who are you referring to?

A. Eric.

Arellano's testimony amounts to more than a scintilla of evidence that the brothers removed the generators from the club. Accordingly, we conclude that the brothers' no-evidence challenge as to the generators fails.

**Liquor inventory**

As to the liquor, the Perez brothers do not articulate a specific challenge to the sufficiency of the evidence. Instead, the brothers seek to discredit Altamirano's testimony that the club's liquor supply was missing and that the missing portion was worth $5,000 to $10,000. The brothers state that Altamirano's testimony "could not survive cross-examination because he could not explain the

fact that the club only spent $2,650.00 in liquor from the lockout until the temporary injunction hearing." The brothers then conclude their briefing by reiterating that they deny taking "the generator or the alcohol." We construe this series of statements as a challenge to the court's implied finding that the brothers exercised dominion and control over the club's liquor in an unlawful and unauthorized manner.

At trial, Le Prive entered into evidence "before" and "after" photographs of the shelf where the club's liquor inventory was stored, showing that much of the supply was missing. Altamirano testified that the brothers removed the liquor from the premises and had not returned it as of the time of the trial. The brothers argue that Altamirano's testimony cannot serve as competent evidence because it was discredited on cross examination. However, this alleged impeachment of Altamirano's testimony appears to be more relevant to the issue of damages, rather than liability. Altamirano testified that the liquor removed from the club was worth $5,000 to $10,000 and that, as a result of the missing liquor, the club lost $13,000 to $15,000 in profits. On cross-examination, the brothers' lawyer confronted Altamirano with an exhibit that listed the total cost of liquor for December 2013—the month after the lockout—as approximately $2,600. Altamirano confirmed that the amount was correct.

The value of certain property and the cost for the loss of its use is a conversion damages issue; it does not bear on whether the conversion occurred at all. *See Wiese v. Pro Am Servs., Inc.*, 317 S.W.3d 857, 862 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (plaintiff who establishes conversion is entitled to damages for loss of use or the value of the property). The brothers do not articulate a challenge to the amount of damages the trial court awarded. Rather, the brothers ask this court to reverse the trial court's judgment and render that Le

Prive take nothing, a result which would require the brothers to demonstrate that there was no evidence that they converted any property, not merely that the conversion damages award was too high. Considering Altamirano's testimony, we conclude there is more than a mere scintilla of evidence supporting a finding that the brothers removed the liquor from the club and, therefore, converted it. As a result, the brothers' no-evidence challenge as to club's liquor inventory fails.

## Conclusion

The Perez brothers' second issue is overruled as inadequately briefed. The brothers' remaining legal sufficiency challenges to the trial court's damages awards are also overruled. Accordingly, we affirm the judgment of the trial court.

/s/    Marc W. Brown
        Justice

Panel consists of Justices Jamison, Donovan, and Brown.

15