**Motion for Rehearing Granted in Part; Motion for En Banc Reconsideration Denied as Moot; Memorandum Opinion of June 18, 2020, Withdrawn; Reversed in Part, Affirmed in Part, and Substitute Majority Opinion and Concurring and Dissenting Opinion filed December 29, 2020.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-18-00216-CV

---

## JOE ALFRED IZEN, JR., Appellant

## V.

## BRIAN LAINE AND KIMBERLY LAINE, Appellees

---

**On Appeal from the 55th District Court
Harris County, Texas
Trial Court Cause No. 2013-28211**

---

## SUBSTITUTE MAJORITY OPINION ON REHEARING

We grant in part appellant's motion for rehearing. We withdraw our memorandum opinion of June 18, 2020 and issue the following substitute opinion in its place. Appellant's motion for reconsideration en banc is denied as moot.

Appellant Joe Alfred Izen, Jr. appeals from a final judgment ordering him to disgorge legal fees appellees Brian and Kimberly Laine paid him pursuant to an unconscionable attorney employment agreement. Izen raises several issues, the first of which challenges the award because the Laines' claims seeking recovery of fee forfeiture regarding fees paid in the past were barred by limitations. For the reasons explained below, we sustain this point. We reverse the portion of the judgment ordering disgorgement from Izen of $70,126.13 in attorneys' fees and all interest based on that award. We overrule Izen's remaining issues and affirm the judgment in all other respects, including the portion of the judgment ordering that Izen forfeit all fees not paid by the Laines.

## Background

Izen is an attorney who offices in Houston. Brian Laine worked as a Jones Act seaman for Big Inch Marine Systems, Inc. and Stolt Offshore, Inc. (collectively "Big Inch"). Kimberly Laine is his wife. Brian was seriously injured while working on the job in a Louisiana marine fabrication yard. It is undisputed that Brian liked working for his employer Big Inch and they did everything needed to take care of him after his injury. Brian and Big Inch negotiated a settlement of his Jones Act claims.

The proposed settlement included two lump sum payments. The first was $60,000, the second was $75,000 for Brian's future medical needs. The two lump sum payments were payable once Brian signed the formal settlement agreement. The negotiated settlement agreement also included an annuity. The annuity guaranteed Brian a monthly payment of about $1,100 for a minimum of thirty

2

years. The annuity also included a two percent annual cost of living adjustment.[1] Big Inch reserved the right to subrogation of any amounts Brian recovered against third parties also found to be responsible for his injuries. Big Inch's attorney drafted the proposed settlement agreement and sent it to Brian. Big Inch recommended that Brian consult with an attorney regarding the proposed settlement document.

Izen entered the story at this point when Brian contacted him by email in the middle of July 2002. Brian contacted Izen regarding (1) Izen reviewing the draft settlement agreement to make certain it said what Brian understood it should say, and (2) pursuing any claims Brian might have against third-party entities possibly responsible for his injuries. According to Brian, he did not contact Izen regarding a lawsuit against his employer Big Inch. Izen has not disputed that a written proposed settlement agreement between Big Inch and Brian had been prepared before Brian contacted Izen. Brian faxed the proposed settlement agreement to Izen on July 23, 2002. Izen reviewed the document, made pencil margin notes on certain pages, and faxed the annotated pages back to Brian on August 2. Nothing changed in the final settlement agreement as a result of Izen's notations.

Izen and Brian met in person on August 9. Brian signed an attorney employment agreement with Izen during this meeting.[2] The attorney employment agreement provided that the Laines retained Izen to "sue for and recover all damages and compensation to which [the Laines] may be entitled as well as to compromise and settle all claims arising out of the causes of action against Triple C Fabricators, Inc. and any other responsible parties. . . ." The fee agreement also

---

[1] The first annuity payment was made on September 24, 2002 in the amount of $1,065.11.

[2] Kimberly signed the agreement at some point during that day.

provided that Izen would represent "Client, Brian Laine, in his Workmen's Compensation claim against his employer, Big Inch Marine, Inc." Izen did not offer Brian a flat fee option or an hourly rate option in his fee agreement. Izen instead offered Brian only a thirty-five percent contingent-fee payment option. Izen told Brian that he was to be paid thirty-five percent of all settlement payments included in the proposed settlement agreement with Big Inch. This included two lump sum payments, as well as a monthly annuity payment for at least thirty years. Izen explained that the payments were to be used to finance the contingent-fee litigation in Louisiana against the third-party defendants such as Triple C Fabricators.

Izen and Brian attended the settlement meeting with Big Inch the same day that the attorney employment agreement was signed. At the meeting, Brian signed the Big Inch settlement agreement, which was unchanged from the original proposed settlement agreement. Izen signed the settlement agreement as Brian's attorney. It is undisputed that Big Inch made the two lump sum payments called for by the settlement agreement and also set-up the annuity with Hartford Insurance. It is also undisputed that Hartford subsequently made all monthly annuity payments to Brian. Brian testified that he made the initial thirty-five percent payment on each lump sum and timely made most of the monthly annuity payments as well. While Brian missed some monthly payments, he would eventually catch up by making larger payments. During trial, Izen estimated that the Laines paid him between $70,000 and $90,000. Izen also agreed that he would eventually be paid a total of $228,730.80 out of the Laines' Big Inch Settlement proceeds.

The fee agreement authorized Izen, who was not licensed to practice law in Louisiana, to associate other counsel at his cost to pursue the third-party litigation.

4

Izen asked Big Inch's attorney, Ralph Kraft, if he could recommend a Louisiana attorney who could pursue the third-party claims in Louisiana. Kraft recommended Conrad S. P. Williams. Williams met with Brian and agreed to represent Brian in his claims against the third-party defendants. Williams would be compensated out of Izen's contingent fee recovery, if any. Williams and Izen agreed they would split Izen's thirty-five percent of any recovery sixty percent for Williams and forty percent for Izen.

It is undisputed that Izen drafted a proposed pro-se petition against third-party entities Brian believed were responsible for his injuries to be filed in Louisiana within Louisiana's one-year statute of limitations for personal injury claims. Izen explained that the filing of the pro se petition would give him time to find a Louisiana attorney to handle the Laines' lawsuit. The pro se petition was timely filed. According to Brian and Williams, the drafting and filing of the pro se petition was the extent of Izen's involvement in the third-party defendant litigation. Izen disputed that during his trial testimony. According to Izen, he helped with some discovery responses and stood by ready to take over the litigation if that became necessary. Ultimately, the lawsuit was voluntarily dismissed by Brian with no recovery, so there was no contingent fee owed on his claims against the third-party defendants.

Once the third-party litigation was dismissed, Brian terminated Izen's services saying he was no longer needed. Brian also stopped making the monthly annuity payments to Izen because there was no longer third-party litigation to be financed. This was done in a letter sent in August 2007. Brian did not, however, ask for repayment of the amounts he had already paid Izen. Izen sent a letter back to Brian on March 27, 2008 telling Brian that his representation ended when Brian received the annuity contract in October 2002.

5

Izen sued the Laines in county court on March 26, 2010. For reasons not disclosed in the record, the case was later transferred to district court. Izen alleged several causes of action, including a request for a declaratory judgment that he owned a thirty-five percent interest in the Hartford annuity and in each annuity payment. Izen also alleged causes of action for breach of contract, conversion, unjust enrichment, quantum meruit, and breach of fiduciary duty, and he sought a turnover order and injunctive relief. The Laines answered the lawsuit, initially with a general denial but later adding numerous affirmative defenses to Izen's claims, including an assertion that Izen's attorney employment agreement was unconscionable. The Laines eventually filed a counterclaim against Izen on November 4, 2011, alleging that Izen took advantage of the Laines by violating his fiduciary duty and collecting money he was not due, and they sought to recover all money, totaling $70,126.13, they had paid to Izen.

The case went to trial before a jury. At the close of Izen's case, the trial court granted the Laines' motion for directed verdict on all of Izen's claims based on a determination that the attorney fee agreement was unconscionable. The trial court also granted directed a verdict in Izen's favor, providing that Izen's "motion for directed verdict on all of [the Laines'] claims is also granted, except as set out below. At the latest, all of [the Laines'] causes of action accrued on August 9, 2007, when Izen was terminated as counsel. [The Laines'] claims were not filed within the four year period of limitations." The trial court's directed verdict order also stated that the Laines might "be entitled to disgorgement of the fees Izen has received because the Attorney Employment Agreement is against public policy under these facts." The trial court ordered briefing on that issue.

A month later, the trial court signed an order based principally on *Burrow v. Arce*, 997 S.W.2d 229 (Tex. 1999), directing Izen to "disgorge all fees collected

6

from [the Laines] in the matters at issue in this case." The trial court then instructed the Laines to file a proposed final judgment setting out the specific amount of fees received by Izen as the judgment amount. The trial court also ordered the Laines to calculate the amount of prejudgment and post-judgment interest. The trial court then signed a final judgment ordering Izen to disgorge $70,126.13 and to pay prejudgment interest of $48,337.56 that began accumulating on August 9, 2002. Izen objected to the trial court's prejudgment interest calculation in the final judgment. The trial court slightly decreased the amount of prejudgment interest in a subsequent "final order" amending the final judgment. This appeal followed.

## Analysis

### I. Izen's issues based on the trial court's ruling that the attorney employment agreement was unconscionable as to the Big Inch Settlement.

Izen's first, second, third, fourth, fifth, and sixth issues challenge the trial court's ruling that his attorney employment agreement with the Laines was unconscionable, and the directed verdict granted on all of his claims against the Laines based on that determination.

#### A. Izen's attorney employment agreement was unconscionable as a matter of law as to the Big Inch Settlement.

Izen argues in his second and third issues that the trial court erred when it concluded his attorney employment agreement was unconscionable. Izen contends in his fourth issue that the trial court should have granted his motion for directed verdict on his unjust enrichment cause of action. In his fifth issue Izen asserts that the trial court erred when it granted a directed verdict on his causes of action based on the trial court's unconscionability determination. Finally, in his sixth issue Izen

7

contends that the trial court violated his right to a jury trial when it granted the Laines' motion for directed verdict. We address these issues together.

### 1.  *Standard of review and applicable law*

A directed verdict is warranted when the evidence is such that no other verdict can be rendered and the moving party is entitled, as a matter of law, to judgment. *Tanglewood Homes Ass'n v. Feldman*, 436 S.W.3d 48, 66 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). When reviewing a directed verdict, an appellate court views the evidence in the light most favorable to the party against whom the verdict was rendered. *Szczepanik v. First S. Trust Co.*, 883 S.W.2d 648, 649 (Tex. 1994) (per curiam). When reviewing a directed verdict on a legal issue, we consider all the evidence presented at trial, viewing it in the losing party's favor "as much as the record allows." *S.V. v. R.V.*, 933 S.W.2d 1, 8 (Tex. 1996). We may consider any reason why the directed verdict should have been granted, even if not stated in the party's motion. *Industrial III, Inc. v. Burns*, No. 14-13-00386-CV, 2014 WL 4202495, at *8 (Tex. App.—Houston [14th Dist.] Aug. 26, 2014, pet. denied) (mem. op.).

The attorney-client relationship gives rise to a fiduciary relationship as a matter of law. *Meyer v. Cathey*, 167 S.W.3d 327, 330-31 (Tex. 2005) (per curiam). When interpreting and enforcing attorney-client fee agreements, it is "not enough to simply say that a contract is a contract. There are ethical considerations overlaying the contractual relationship." *Hoover Slovacek, LLP v. Walton*, 206 S.W.3d 557, 560 (Tex. 2006) (internal quotation marks omitted). In Texas, attorneys are held to the highest standards of ethical conduct in their dealings with their clients. *Id.* As a result, attorneys must conduct their business with their clients with inveterate honesty and loyalty and they must always keep the client's best interest in mind. *Id.* at 561. Therefore, a lawyer has a duty to inform the

8

client of all material facts and this duty requires that a lawyer's fee agreement be clear. *Bennett v. Comm'n for Lawyer Discipline*, 489 S.W.3d 58, 70 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

Contingent fee agreements are generally acceptable in Texas. *Walton*, 206 S.W.3d at 561. Their primary purpose is to provide an opportunity to plaintiffs who cannot afford an attorney to obtain legal services by compensating the attorney from the proceeds of any recovery. *Id.* A contingent fee agreement offers the attorney the potential to earn a larger fee than might have been earned under an hourly billing agreement because it compensates the attorney for the risk that no fee at all will be recovered if the client's case is lost. *Id.* This risk-sharing feature of contingent fee agreements creates an incentive for lawyers to work diligently and obtain the best results possible for the client. *Id.*

Contingent fee agreements are subject to the prohibition against an attorney charging or collecting an unconscionable fee. *Id.* (citing Tex. Disciplinary Rules Prof'l Conduct R. 1.04(a), *reprinted in* Tex. Gov't Code tit. 2, subtit. G, app. A (Tex. State Bar R. art. X, § 9)). As the Supreme Court noted in *Walton*, while "the Disciplinary Rules do not define standards of civil liability for attorneys, they are persuasive authority outside the context of disciplinary proceedings, and we have applied Rule 1.04 as a rule of decision in disputes concerning attorney's fees." *Id.* at 561 n.6.

Under the Disciplinary Rules, a fee is unconscionable if a competent lawyer could not form a reasonable belief that the fee is reasonable. *Id.* at 561 n.7. (citing Tex. Disciplinary Rules Prof'l Conduct R. 1.04(a)). The factors to be considered when determining whether a fee is reasonable include, but are not limited to, the following:

9

(1)    the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;

(2)    the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3)    the fee customarily charged in the locality for similar legal services;

(4)    the amount involved and the results obtained;

(5)    the time limitations imposed by the client or by the circumstances;

(6)    the nature and length of the professional relationship with the client;

(7)    the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8)    whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Id.* (quoting Tex. Disciplinary Rules Prof'l Conduct R. 1.04(b)).

If the question is whether a particular fee amount or contingency percentage charged by the attorney is unconscionable under all relevant circumstances of the representation, then it is an issue for the factfinder to resolve. *Id.* at 561. But, if the question is whether a fee agreement between an attorney and a client is contrary to public policy and unconscionable at the time it was formed, then it is a question of law. *Id.* at 562. We are presented with the latter situation.

> 2.    *The trial court did not err when it determined the Big Inch Settlement part of the attorney fee agreement was unconscionable.*

Izen argues that the trial court erred when it determined that the attorney fee agreement was unconscionable. Izen makes several arguments in support of his

10

contention that the trial court erred, including (1) the truism that a thirty-five percent contingency fee is not automatically an unconscionable fee in all cases; (2) the litigation was filed in Louisiana against the third parties Brian believed were responsible for his injuries and significant work was done in that litigation; (3) the Laines approved the referral agreement with Williams; (4) the time he spent reviewing the proposed settlement documents and attending the settlement conference with Big Inch; and (5) the Laines had not demonstrated good cause for terminating his legal services.

Izen ignores the fact that the Laines retained him to handle two distinct jobs. The first involved review of the proposed Big Inch settlement agreement that had already been negotiated and accepted by Brian and then attending the settlement conference where the settlement agreement would be signed. This was a very discrete and finite representation that presented no risk and little or no expense. The second distinct job required Izen to pursue through litigation the Louisiana third parties Brian believed were responsible for his injuries. This second job did include the risk that there would be no recovery to both Izen and the Laines; indeed, ultimately there was no recovery in that litigation as it was voluntarily dismissed with the clients' approval. In his arguments against the trial court's unconscionability determination, Izen combines the two jobs and insists that his thirty-five percent contingent fee on the Big Inch Settlement was not unconscionable because the Big Inch Settlement was used to finance the litigation against the Louisiana third parties.

We reject Izen's attempt to combine the two separate jobs he was hired to perform because of the unique situation presented. To the extent it might be acceptable for an attorney to combine the pursuit of different target entities under a single fee agreement and divide the cost of that combined litigation among all of

11

the recoveries obtained either through settlement or trial when none of the target entities have already settled—a question we need not decide—we conclude it is not acceptable when one of the target entities has already reached a settlement before the attorney even begins his representation. *See Walton*, 206 S.W.3d at 561 (stating that attorneys must conduct their business with their clients with inveterate honesty and loyalty and must always keep the client's best interest in mind); *Goffney v. Rabson*, 56 S.W.3d 186, 193 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (stating that one of most common breaches of fiduciary duty by attorneys involves placing attorney's interest above the client's interest). Therefore, we conclude that the propriety of the thirty-five percent contingent fee collected by Izen must be viewed only as it relates to the Big Inch Settlement. Because there was no risk involved in the Big Inch Settlement and little if any reasonably compensable work to be done by Izen on that settlement, we further conclude that it was unconscionable and a violation of public policy for Izen to collect a thirty-five percent contingent fee on the Big Inch Settlement payments disguised as the payment of the expenses incurred in separate litigation against the Louisiana third-party defendants. *See Walton*, 206 S.W.3d at 561 (stating one reason contingent fee agreements are acceptable is because they provide plaintiffs who cannot afford an attorney the opportunity to obtain legal services by allowing the attorney to earn a larger fee than might have been otherwise earned because it compensates the attorney for the risk that no fee at all will be recovered if the client's case is lost); *Burrow*, 997 S.W.2d at 246 (stating that trial court must determine whether attorney's conduct was a clear and serious breach of duty to his client and whether any of the attorney's compensation should be forfeited and if so, what amount).

The language of the attorney employment agreement supports this conclusion. Section VI of the agreement, titled "Deduction of Expenses," provides

> 6.01 All reasonable expenses incurred by the attorney in the handling of this representation, if paid by the attorney, shall be billed to the file as accrued and shall be reimbursed to the attorney before or after final settlement. If for some reason any expenses remain unpaid at the time of the settlement or judgment, those outstanding expenses shall be paid by the client out of the settlement or judgment monies. Clients shall bear no other responsibility for payment of the costs advanced by the attorney(s).

This provision is the only one addressing the payment of expenses in the attorney employment agreement. It would not be clear to a reasonable client reading this provision that the client would be fronting litigation expenses. *Bennett*, 489 S.W.3d at 71; *see also Walton*, 206 S.W.3d at 565 ("For these reasons, the failure of the lawyer to give at the outset a clear and accurate explanation of how a fee was to be calculated weighs in favor of a conclusion that the fee may be unconscionable.") (internal quotation marks omitted). Instead, it would appear the provision imposes the burden of fronting litigation costs, as well as the risk that reimbursement of any costs paid would only occur in the event there was a recovery, on Izen.

Izen's March 27, 2008 letter to the Laines also supports our conclusion that the fee was unconscionable with respect to the Big Inch Settlement. In that letter, Izen notified the Laines that his representation ended when they received the Hartford annuity contract in October 2002. Therefore, any fees Izen collected under the guise of financing the litigation against the Louisiana third-party defendants were collected under false pretenses in violation of an attorney's duty of honesty and loyalty to his clients. *See Walton*, 206 S.W.3d at 561 (stating that

"a lawyer must conduct his or her business with inveterate honesty and loyalty, always keeping the client's best interest in mind").

We also reject Izen's argument that he was entitled to the full thirty-five percent contingent fee on the Big Inch Settlement payments because, in his view, he was terminated without cause by the Laines. Even indulging a presumption that the Laines terminated him without cause, Izen still cannot overcome the fact that his representation of the Laines must be seen as two distinct matters, the Big Inch Settlement and the Louisiana third-party litigation. We have already determined that the thirty-five percent contingent fee for just the Big Inch Settlement was unconscionable, a conclusion Izen recognized in his opening brief.[3] With respect to the Louisiana third-party litigation, Izen was not entitled to be paid any fees even if he was terminated without cause because there was no recovery. *See id.* (stating that an attorney terminated without cause may seek compensation in quantum meruit or in a suit to enforce the contract by collecting the fee from any damages client subsequently recovers).

We therefore hold that the trial court did not err when it determined as a matter of law that Izen's attorney employment agreement was unconscionable with respect to the Big Inch Settlement, at the time it was formed, and subsequently ordered Izen to disgorge fees not paid but to which Izen claimed entitlement. *See*

---

[3] Izen wrote: "While the value of the legal services performed for the Laines' benefit prior to the [Big Inch Settlement Agreement] could be viewed as small in light of the $443,439.60 [Big Inch Settlement Agreement], the value of Izen and Williams' legal services performed after the [Big Inch Settlement Agreement] was not." Izen then continued: "While a reasonable attorney might opine, or Judge might find that Izen's collection of a 35% contingent fee interest in the Hartford annuity payments received by Laines was an excessive fee based solely on the value of Izen's services prior to the [Big Inch Settlement Agreement], no reasonable factfinder could find the 35% contingent fee excessive or unreasonable if the value of Izen and Williams' $174,000.00 post-settlement legal services which benefited the Laines was taken into account."

14

*id.* at 562, 566 ("Hoover's termination fee provision penalized Walton for changing counsel, granted Hoover an impermissible proprietary interest in Walton's claims, shifted the risks of the representation almost entirely to Walton's detriment, and subverted several policies underlying the use of contingent fees. We hold that this provision is unconscionable as a matter of law, and therefore, unenforceable."); *Dardas v. Fleming, Hovenkamp & Grayson, P.C.*, 194 S.W.3d 603, 613 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (stating that a court may deem the Texas Disciplinary Rules of Professional Conduct to be an expression of public policy so that a contract violating them is unenforceable as against public policy). We overrule Izen's second and third issues.

3. *The trial court did not err when it granted the Laines' motion for directed verdict on Izen's causes of action and denied his motion based on quasi-estoppel.*

Izen argues in his fourth issue that the trial court erred when it denied his motion for directed verdict on his unjust enrichment cause of action based on quasi-estoppel. Izen asserts in his fifth issue that the trial court erred when it granted a directed verdict on his causes of action against the Laines. We address these issues together. Each of Izen's causes of action depend on the enforceability of the attorney employment agreement. Having already affirmed the trial court's determination that the attorney employment agreement was unconscionable and unenforceable with respect to the Big Inch Settlement, we conclude that the trial court did not err when it granted a directed verdict on Izen's causes of action dependent on that agreement, including his suit for a declaratory judgment, breach of contract, conversion, unjust enrichment, and breach of fiduciary duty, as well as his request for a turnover order and his request for injunctive relief.

Turning to Izen's quantum meruit cause of action, we conclude that the trial court did not err when it granted the directed verdict on that claim as well. The

15

only recovery the Laines received was from the Big Inch Settlement. We have already affirmed the trial court's determination that the attorney employment agreement for that representation was unconscionable because the settlement had already been negotiated prior to Izen's involvement. Izen is not entitled to any fee on the Louisiana third-party litigation because there was no recovery. *See Walton*, 206 S.W.3d at 561 (stating that an attorney terminated without cause may seek compensation in quantum meruit or in a suit to enforce the contract by collecting the fee from any damages client subsequently recovers).

The same principle defeats Izen's quasi-estoppel argument in his fourth issue. Izen asserts that the trial court should have granted his motion for directed verdict on his claim for the full contingent fee on the amount of the Big Inch Settlement because he fully performed on that part of the attorney employment agreement. According to Izen, the Laines accepted the benefits of that settlement and cannot later deprive him of his full payment.

"Quasi-estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken." *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000). Izen argues that by continuing to accept annuity payments under the settlement, the Laines were estopped from not fully paying him under the attorney fee agreement. We have already determined that the attorney employment agreement with respect to the Big Inch Settlement is unconscionable and unenforceable; therefore, Izen cannot rely on quasi-estoppel to collect an unconscionable fee. We have also decided that he was not entitled to a fee for the unsuccessful Louisiana third-party litigation. The fact the Laines may have been unaware of the law surrounding an attorney's fiduciary responsibilities and acceptable contingent fee contracts and made many payments to Izen does not change this analysis. *See Walton*, 206 S.W.3d at 561 (stating attorneys must

16

conduct their business with their clients with inveterate honesty and loyalty and must always keep the client's best interest in mind); *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 160 (Tex. 2004) (stating that an attorney owes a client a duty to inform the client of matters material to the representation); *Goffney*, 56 S.W.3d at 193 (stating that one of most common breaches of fiduciary duty by attorneys involves placing attorney's interest above the client's interests). We overrule Izen's fourth and fifth issues.

4.     *The trial court did not violate Izen's right to a jury trial when it granted the Laines' motion for directed verdict.*

In his sixth issue, Izen argues that the trial court violated his right to a jury trial when it granted the Laines' motion for directed verdict on his claims because disputed fact issues required resolution by a jury. We disagree.

The jury's function is to determine questions of fact. *Fort Worth & D.C. Ry. Co. v. Yantis*, 185 S.W. 969, 972 (Tex. Civ. App.—Fort Worth 1916, writ ref.). When the facts are undisputed, only a legal question remains. *City of Dallas v. Frank*, 69 S.W.2d 830, 830 (Tex. App.—Dallas 1934, no writ). Questions of law are decided by the court. Therefore, when the facts are undisputed, the trial court may decide whether a party is entitled to judgment. *Szczepanik*, 883 S.W.2d at 649. Under those circumstances, a party's constitutional right to a trial by jury is not violated. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 336 (1979) (noting that procedural devices such as summary judgment and directed verdict do not threaten the federal constitution's right to jury trial in civil cases); *Rosenthal v. Boyd*, No. 03-11-00037-CV, 2013 WL 1876513, at *4 (Tex. App.—Austin May 1, 2013, no pet.) (mem. op.) (in civil cases the right to a jury trial applies only where there are issues of fact to be resolved).

17

We have already determined that the trial court did not err when it granted a directed verdict based on its determination that the attorney employment agreement was unconscionable as a matter of law with respect to the Big Inch Settlement. Therefore, the trial court did not violate Izen's right to jury trial by granting the Laines' motion for directed verdict on that issue. *See Parklane Hosiery Co.*, 439 U.S. at 336; *Rosenthal*, 2013 WL 1876513, at *4.

Izen also argues there was a fact issue on the amount of money the Laines had paid him pursuant to the attorney employment agreement and thus the amount of the fee disgorgement. Due to our resolution of Izen's first issue, discussed next, we need not address this part of Izen's argument. We overrule his sixth issue.

### B. The trial court erred in relying on the Laines' affirmative defense of unconscionability to order affirmative recovery of money damages for fees paid.

Izen argues in his first issue that the judgment is error insofar as it awarded recovery to the Laines in the form of disgorgement of $70,126.13 in attorneys' fees the Laines paid Izen. Izen contends this remedy is unavailable as a matter of law in the present case because the Laines had no live claims for affirmative relief, and because the counterclaim the Laines at one time filed was barred by limitations. In support, Izen cites the Texas Supreme Court's opinion in *Cosgrove v. Cade*, 468 S.W.3d 32, 35 (Tex. 2010), in which the court stated that fee forfeiture claims are subject to a four-year limitations period. *Id.* Izen asserts that the Laines' claims accrued no later than August 9, 2007 and as a result, their counterclaim, filed November 4, 2011, was filed too late and the trial court could not order fee forfeiture.

Izen sued to secure his right to a percentage of the annuity payments, both in the past and going forward. To defeat his recovery, the Laines pleaded several

matters in the form of affirmative defenses, including unconscionability,[4] breach of fiduciary duties, and charging and collecting unreasonable and excessive fees. The Laines alleged that Izen was not entitled to payment for any legal services. At the time they asserted their affirmative defenses, the Laines had already paid Izen over $70,000, and he was seeking more.

The Laines also filed a counterclaim to set aside the contract and obtain a refund of all monies paid to Izen on the grounds that the contract was unconscionable and that Izen had breached his fiduciary duties. As explained, the trial court agreed with Izen on the limitations issue because it ruled the Laines' counterclaim was barred by limitations.[5]

Regarding their unconscionability affirmative defense, the trial court ruled in the Laines' favor that the fee agreement was unconscionable, and thus Izen could not recover on his breach of contract claim. *See In re Poly-Am., L.P.*, 262 S.W.3d 337, 348 (Tex. 2008) (orig. proceeding) (unconscionable contracts are unenforceable). As stated in *Burrow*, the trial court was authorized to declare Izen's attorney employment agreement unconscionable based on the assertion of that defense. *Burrow*, 997 S.W.2d at 243-45 (recognizing remedy of fee forfeiture applies when an attorney sues for payment of compensation); *Webb v. Crawley*, 590 S.W.3d 570, 579 (Tex. App.—Beaumont 2019, no pet.) ("Because attorneys are prohibited by the Disciplinary Rules from charging or collecting an unconscionable fee, an attorney's remedy against a client is subject to the

---

[4] *See Brown v. Aztec Rig Equip., Inc.*, 921 S.W.2d 835, 845 (Tex. App.—Houston [14th Dist.] 1996, writ denied) (unconscionability can be asserted as an affirmative defense).

[5] The Laines did not take advantage of section 16.069 of the Texas Civil Practice and Remedies Code, which would have allowed them to assert a time-barred counterclaim, but only if the claim was asserted within thirty days after their answer was due. *See* Tex. Civ. Prac. & Rem. Code § 16.069.

19

prohibition against charging or collecting an unconscionable fee.") (internal quotation marks omitted). The trial court, however, ordered forfeiture not only of prospective fees but also $70,126.13 in fees the Laines already paid. The court concluded affirmative recovery was available based on the Laines' assertion of unconscionability and request for fee forfeiture as defensive matters.

Under the present circumstances, we conclude the Laines may not rely on their unconscionability and fee forfeiture defenses to recover money damages from Izen as affirmative relief for fees already paid. We reach this conclusion for several reasons, beginning with the inherent distinction between affirmative defenses and affirmative claims for relief. The nature of an affirmative defense is one of confession and avoidance. *See Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989). An affirmative defense does not advance the claims of the party asserting it; it instead defeats the opponent's claim. *See, e.g.*, *Gorman v. Life Ins. Co. of N. Am.*, 811 S.W.2d 542, 546 (Tex. 1991) (op. on reh'g) ("Pleading an affirmative defense permits introduction of evidence which does not tend to rebut the factual propositions asserted in the plaintiff's case, but which seeks to establish an independent reason why the plaintiff should not recover."); *Fawcett v. Grosu*, 498 S.W.3d 650, 663 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) ("An affirmative defense is defined as 'a denial of the plaintiff's right to judgment even if the plaintiff establishes every allegation in its pleadings.'") (quoting *Hassell Constr. Co. v. Stature Commercial Co.*, 162 S.W.3d 664, 667 (Tex. App.—Houston [14th Dist.] 2005, no pet.)). If the defendant is doing nothing more than resisting the plaintiff's recovery, the pleading cannot be construed as requesting affirmative relief. *Lipsey v. Lipsey*, 660 S.W.2d 149, 151 (Tex. App.—Waco 1983, no writ).

A "claim," in contrast, includes the assertion of any existing "*right to payment* or to an equitable *remedy*." *See Jaster v. Comet II Constr., Inc.*, 438 S.W.3d 556, 564 (Tex. 2014) (emphasis added); *see also* "claim," Black's Law Dictionary 281-82 (9th ed. 2009) (defining claim as including "[t]he assertion of an existing right; any right to payment or to an equitable remedy"). Unlike an "affirmative defense," a claim for "affirmative relief" asserted by a party in a defensive posture is "a cause of action, independent of the plaintiff's claim, on which the claimant could recover compensation or relief, even if the plaintiff abandons or is unable to establish his cause of action." *Univ. of Tex. Med. Branch at Galveston v. Estate of Blackmon ex rel. Shultz*, 195 S.W.3d 98, 101 (Tex. 2006) (per curiam). Generally, a claimant may recover affirmative relief only upon asserting a cause of action or a claim in a proper pleading. *See Tex. Fire & Cas. Underwriters v. Blair*, 130 S.W.2d 409, 411 (Tex. App.—Austin 1939, writ dism'd judgm't cor.).

Fee forfeiture is a form of equitable relief. *See First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 221 (Tex. 2017); *Burrow*, 997 S.W.2d at 237-40 & nn.36, 37; *Hsin-Chi-Su v. Vantage Drilling Co.*, 474 S.W.3d 284, 298 (Tex. App.—Houston [14th Dist.] 2015, pet. denied); *Bigham v. Se. Tex. Envtl., LLC*, 458 S.W.3d 650, 673-74 (Tex. App.—Houston [14th Dist.] 2015, no pet.). Because fee forfeiture is a remedy, one seeking it first must prove entitlement to recover on a cause of action warranting its imposition. *See First United*, 514 S.W.3d at 221-22 (holding that disgorgement and fee forfeiture are equitable remedies that a court may award based on a breach-of-fiduciary-duty claim); *Burrow*, 997 S.W.2d at 237-40 & nn.36-37 (same).

Looking to the Restatements, several say a principal may recover fee disgorgement on a claim for relief, but they do not suggest relief is available

21

without an affirmative claim. *See* Restatement (Third) of the Law Governing Lawyers § 37 cmt. a (2000) ("A client who has already paid a fee subject to forfeiture can sue to recover it."); Restatement (First) of Restitution § 5 cmt. b (1937); Restatement (Second) of Agency § 469 cmt. e (1958) ("If the principal, in ignorance of the agent's faulty conduct, pays to the agent compensation or indemnity to which he is not entitled, the principal can maintain an action to recover the amount.").

The Laines did not have an affirmative claim supporting the remedy of fee forfeiture. They asserted a counterclaim, but it was barred by limitations. We affirm that ruling.[6] If the passage of time bars the cause of action for which fee forfeiture is the requested remedy, then the claimant cannot recover because "the opportunity for an equitable remedy expired with limitations." *Cosgrove*, 468 S.W.3d at 39. Claims seeking equitable remedies are subject to legal bars such as statutes of limitations. *See id.*; *Chorman v. McCormick*, 172 S.W.3d 22, 24-25 (Tex. App.—Amarillo 2005, no pet.); *see also* Restatement (Third) of the Law Governing Lawyers § 6. Therefore, the right to affirmative relief—or, stated differently, the right to "a judicial remedy"—is restricted by statutes of limitations.

Even if we reasonably construed the Laines' affirmative defenses of unconscionability and fee forfeiture as affirmative claims for relief—we can[7]— they were not asserted until after the applicable limitations period expired and thus came too late.

---

[6] Although the Laines assert in their brief that the trial court erred in so ruling, they did not appeal this part of the judgment. Moreover, to the extent that this assertion can be construed as a cross-point, they failed to brief why the trial court's ruling was erroneous.

[7] To qualify as a claim for affirmative relief, a defensive pleading must allege the defendant's cause of action entitles him to the recovery of benefits, compensation, or relief, independent of the plaintiff's claim. *Gen. Land Office of Tex. v. OXY U.S.A., Inc.*, 789 S.W.2d 569, 570 (Tex. 1990). The Laines' answer meets these criteria.

Of course, equitable remedies like fee forfeiture may be wielded defensively, as here, to foreclose an agent's contract claim for fees. *See Burrow*, 997 S.W.2d at 244-45. But if a principal requests fee disgorgement to recover money damages for fees already paid, then a judgment awarding that remedy must be based on, and supported by, a successful affirmative claim or cause of action. When the cause of action is barred by limitations, so, too, is the right to affirmative relief. Thus, the affirmative defense of unconscionability could defeat Izen's affirmative claim for payments under the contract but could not afford the Laines affirmative monetary recovery.

Finally, we also observe that in compelling Izen to restore fees paid in the past, after declaring the fee agreement unenforceable, the court awarded relief akin to restitution—another form of extra-contractual equitable relief available to prevent unjust enrichment. *See Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992) (describing unjust enrichment). But obtaining a restitution remedy requires a claim for affirmative relief such as unjust enrichment. That remedy would be unavailable here because the Laines asserted no such claim. Moreover, had they raised it in their counterclaim it too would have been barred by limitations. *See Elledge v. Friberg-Cooper Water Supply Corp*., 240 S.W.3d 869, 870-71 (Tex. 2007) (per curiam) (limitations applies to unjust enrichment claim).

Therefore, we sustain Izen's first issue and reverse the portion of the judgment ordering disgorgement of $70,126.13 in attorneys' fees and related interest from Izen.

## II.    Izen has not established that he is entitled to a new trial based on items allegedly missing from the reporter's record.

Izen argues in his seventh issue that his ability to present his arguments on appeal has been adversely affected by two items missing from the reporter's

record. According to Izen, the missing items are the reporter's record of the hearing on his first motion for new trial and documentation in the record of the trial court's "directed verdict ruling." Izen continues that the trial court "received evidence and considered arguments at those hearings concerning the amount of attorney's fees the Laines paid Izen and the calculations of prejudgment interest on those fees." Izen, citing Rule 34.6, argues that he is entitled to a new trial because he has been cheated "out of the benefit of a full designated court reporter's record." *See* Tex. R. App. P. 34.6(f) (providing that if an appellant can establish that a significant exhibit or portion of a court reporter's notes and records have been lost or destroyed and the parties cannot agree to a replacement, the appellant is entitled to a new trial). Izen offers no further explanation on how these two items are necessary to the resolution of the appeal. Izen also makes no assertion that the parties attempted but failed to reach agreement on replacements for the allegedly missing items.

We turn first to Izen's contention that the trial court's "directed verdict ruling" is not included in the reporter's record. We disagree. The fourth volume of the reporter's record contains the Laines' oral motion for directed verdict on Izen's causes of action and the trial court's granting of that motion. In granting the Laines' motion, the trial court stated "[t]he fee is completely thoroughly absolutely unconscionable and I'm going to render -- I'm going to direct the verdict and render judgment for the defense." The trial court then informed the parties that he would issue a written order granting the Laines' motion. That order appears in the clerk's record. Because the trial court's "directed verdict ruling" appears in the record, this contention cannot support Izen's request for a new trial based on Rule 34.6(f).

Next, Izen asserts he is entitled to a new trial because a reporter's record from the hearing on his first motion for new trial is missing. According to Izen, the trial court received evidence and considered the parties' arguments concerning the amount of attorney's fees the Laines paid Izen and the proper calculation of prejudgment interest. We agree with Izen that a reporter's record of the hearing on Izen's first motion for new trial does not appear in the appellate record. The absence of that record, however, does not mean that the hearing was recorded, or, if recorded, that the record was subsequently lost or destroyed, as Izen suggests. *See Haase v. Abraham, Watkins, Nichols, Sorrels, Agosto & Friend, L.L.P.*, 499 S.W.3d 169, 179-80 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). In addition, if the court reporter fails to record a hearing, to preserve error, a party must object to that failure. *Id.* The appellate record contains no indication that Izen objected in the trial court to the court reporter's failure to record the hearing. We therefore conclude Izen did not preserve error on this issue.

In any event, to the extent Izen asserts harm resulting from the absence of a reporter's record material to the amount of fees ordered disgorged, we need not address his complaint due to our reversal of the portion of the judgment awarding the Laines' affirmative recovery.

We overrule Izen's seventh issue.

## III.    The trial court held a hearing on Izen's second motion for new trial.

Izen argues in his eighth issue that the trial court erred and denied his right to due process when it denied him a hearing on his second motion for new trial. The record however, establishes that the trial court did conduct a hearing, albeit brief, on Izen's motion. To the extent Izen argues the hearing was inadequate, he has not cited any authority supporting this contention. None of the cases Izen cites address motions for new trial. Two of Izen's cases address motions to reinstate

following dismissal for want of prosecution. *See Kelly v. Cunningham*, 848 S.W.2d 370, 371 (Tex. App.—Houston [1st Dist.] 1993, no writ) ("The Texas Supreme Court has made it clear that when a party requests an oral hearing on a timely filed, properly verified, motion to reinstate, it is an abuse of discretion for the trial court to refuse to hold an oral hearing."); *Cabrera v. Cedarapids, Inc.*, 834 S.W.2d 615, 618 (Tex. App.—Houston [14th Dist.] 1992, writ denied) (observing that Rule 165a(1) provides for a hearing on a motion to reinstate following dismissal for want of prosecution if requested by movant). The third case, *Giese v. NCNB Texas Forney Banking Center*, addresses whether a trial court must conduct an oral hearing on a motion for summary judgment. 881 S.W.2d 776, 783 (Tex. App.—Dallas 1994, no writ). Even then, the court of appeals rejected the appellant's argument that an oral hearing is mandatory, stating that the decision is instead within the discretion of the trial court. *Id.* We overrule Izen's eighth issue.

## IV. The trial court committed no error when it refused to make findings of fact and conclusions of law.

In his ninth issue Izen asserts that the trial court erred when it refused to make findings of fact and conclusions of law. Indeed, the trial court signed an order denying Izen's request. To the extent Izen asserts the trial court was required to make findings of fact and conclusions of law after the trial court granted the directed verdict, we disagree. Findings of fact and conclusions of law are not appropriate following a directed verdict. *See IKB Indus. v. Pro-Line Corp.*, 938 S.W.2d 440, 443 (Tex. 1997).

We turn next to the trial court's post-directed verdict decisions. When properly requested, the trial court has a mandatory duty to file findings of fact and conclusions of law. *Nicholas v. Envtl. Sys. (Int'l) Ltd.*, 499 S.W.3d 888, 894 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (citing *Cherne Indus., Inc. v.*

26

*Magallanes*, 763 S.W.2d 768, 770 (Tex. 1989)).  The primary purpose for findings of fact is to assist the losing party in narrowing his issues on appeal by ascertaining the true basis for the trial court's decision.  *Id.*  A trial court's refusal to make findings of fact does not require reversal if the record before the appellate court affirmatively shows that the complaining party suffered no harm.  *Id.*  Error is harmful if it prevents an appellant from properly presenting a case to the appellate court.  *Id.* (citing Tex. R. App. P. 44.1(a)(2) and *Tenery v. Tenery*, 932 S.W.2d 29, 30 (Tex. 1996) (per curiam)).  Generally, the controlling issue is whether the circumstances of the case would require the appellant to guess at the reasons for the trial court's decision.  *Id.*

Izen makes no attempt on appeal to demonstrate how he was harmed by the trial court's failure to make findings of fact and conclusions of law.  Even if he had, we conclude that the trial court's failure to file findings of fact was harmless in this case.  Izen asserts that the trial court "tried fact issues concerning unconscionability, excessive fees, the amount of attorney's fees which the Laines allegedly paid Izen, and the proper calculation of prejudgment interest on those fees to itself."  The first two items listed by Izen were resolved by the trial court's directed verdict.  We conclude that Izen's ability to present his issues challenging the trial court's decisions on the latter two items has not been impacted by the trial court's failure to make findings of fact and conclusions of law.  *Elliott v. Kraft Foods N. Am., Inc.*, 118 S.W.3d 50, 54-55 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (rejecting appellant's harm argument because she was able to "properly present the issues on appeal").  We overrule Izen's ninth issue.

27

**V.** **Izen has not established that he was harmed when the trial court refused to admit the complete Williams deposition transcript into evidence.**

Conrad Williams was the Louisiana attorney retained by the Laines to pursue Brian's third-party litigation. Izen called Williams to testify during the trial, and Izen had the opportunity to examine him without limitation by the trial court as to time and subject matter. Once Williams had completed his live testimony, Izen offered the complete transcript from Williams' deposition, totaling 141 pages, into evidence as an exhibit. The Laines objected, the trial court sustained the objection, and excluded the deposition. Izen's tenth issue challenges the trial court's refusal to admit Williams' deposition transcript into evidence as an exhibit.

The decision to admit or exclude evidence lies within the sound discretion of the trial court. *Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007). A trial court exceeds its discretion if it acts in an arbitrary or unreasonable manner or without reference to guiding rules or principles. *Barnhart v. Morales*, 459 S.W.3d 733, 742 (Tex. App.—Houston [14th Dist.] 2015, no pet.). When reviewing matters committed to the trial court's discretion, a reviewing court may not substitute its own judgment for that of the trial court. *Id.* Thus, the question is not whether this Court would have admitted the evidence. Rather, an appellate court will uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling, even if that ground was not raised in the trial court. *Id.* Therefore, we examine all bases for the trial court's decision that are suggested by the record or urged by the parties. *Id.*

A party seeking to reverse a judgment based on evidentiary error must prove that the error probably resulted in rendition of an improper judgment. *Neely v. Comm'n for Lawyer Discipline*, 302 S.W.3d 331, 339 (Tex. App.—Houston [14th

28

Dist.] 2009, pet. denied). To determine whether evidentiary error probably resulted in the rendition of an improper judgment, an appellate court reviews the entire record. *Barnhart*, 459 S.W.3d at 742 (citing *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001)).

Even if we assume that the trial court erred when it excluded the Williams deposition transcript as an exhibit, a question we need not decide, Izen must still show that he was harmed by the exclusion. Tex. R. App. P. 44.1(a); *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011) (stating that harmless error rule applies to all errors). We conclude that the error, if any, was harmless because Williams testified live during the trial and Izen had the opportunity to examine him. *See Schreiber v. State Farm Lloyds*, 474 S.W.3d 308, 317-18 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (concluding that trial court's erroneous exclusion of evidence was harmless because trier of fact heard similar evidence throughout the trial).[8]

---

[8] To the extent Izen argues that he was harmed because there were numerous references to the excluded Exhibit 75, Williams's deposition transcript, in unidentified locations, the result is the same. First, Izen has not identified where these references occurred or to which issue they were directed. Second, to the extent the Williams deposition transcript might have been attached to the parties' post-directed verdict filings, those filings are included in the appellate record and therefore would be available for this court to review when called upon to do so. Finally, to the extent Izen suggests that it is this court's burden to identify appellate issues and the evidence, such as the Williams deposition transcript or some portion thereof, supporting or not supporting those issues, we reject that invitation. *See King v. Wells Fargo Bank, N.A.*, 205 S.W.3d 731, 734-35 (Tex. App.—Dallas 2006, no pet.) (stating it is well-established that it is not the duty of appellate court to make an independent search of voluminous appellate record for evidence to support appellant's contentions); *Gleason v. Isbell*, No. 14-03-00166-CV, 2004 WL 1205784, at *4 (Tex. App.—Houston [14th Dist.] June 3, 2004, pet. denied) (mem. op.) (holding appellate court has no duty to conduct independent search of voluminous record to determine whether a summary judgment should be reversed).

## VI.   Izen waived his eleventh issue.

Izen conclusorily argues in his eleventh issue that the trial court should have granted his motion seeking sanctions against the Laines because they filed causes of action barred by limitations.  Statute of limitations is an affirmative defense that must be pled by a defendant or it is waived.  Tex. R. Civ. P. 94; *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 155 (Tex. 2015).  Izen has not cited any legal authority holding that a person who files a claim that might be barred by limitations if that defense is pled, subjects a party automatically to sanctions. Therefore, Izen was required to explain why the fact the Laines may have done so here should subject them to sanctions.

While Izen mentions Chapter 10 of the Civil Practice and Remedies Code and Rule 13 of the Texas Rules of Civil Procedure, he offers no explanation or citation to legal authority explaining the standard a trial court must apply when deciding a party's motion for sanctions based on a party filing claims that were possibly barred by limitations, an analysis of how the trial court violated that standard, and the standard of review an appellate court must apply to an issue of this type on appeal.  The Rules of Appellate Procedure require that a brief contain a clear and concise argument for the contentions made, with appropriate citations to legal authority and the record.  Tex. R. App. P. 38.1(i).  We conclude Izen has not met this requirement and has waived his eleventh issue due to inadequate briefing and overrule it.  *See Collins v. Walker*, 341 S.W.3d 570, 575 (Tex. App.— Houston [14th Dist.] 2011, no pet.) (stating that Rule 38.1(i) requirements are "not satisfied by merely uttering brief, conclusory statements unsupported by legal citations").

30

**VII.  We need not address Izen's issue challenging prejudgment interest.**

The trial court determined that the accrual date for the calculation of prejudgment interest was August 9, 2002, the day the Laines made their first payment to Izen.  Izen argues in his twelfth issue that the trial court abused its discretion when it calculated the amount of prejudgment interest included in the final judgment using this accrual date.

Because we have reversed the portion of the judgment awarding the Laines affirmative recovery, it is unnecessary to address Izen's final issue.  Tex. R. App. P. 47.1.

## Conclusion

Having sustained Izen's first issue, we reverse the portion of the judgment ordering disgorgement from Izen of $70,126.13 in attorneys' fees and all interest based on that award.  We affirm the remainder of the court's final judgment.

/s/      Kevin Jewell
Justice

Panel consists of Justices Jewell, Bourliot, and Zimmerer.  (Zimmerer, J., concurring and dissenting).